McCLELLAND, State Auditor, v. LEWIS.

No. 5669. Opinion Filed March 24, 1914.

(139 Pac. 990.)

STATES—Board of Agriculture—Compensation of Clerk—Fund Available. Where Rev. Laws 1910, sec. 12, gives the Board of Agriculture "power to employ all clerical help necessary to conduct the business of the board and fix their compensation within the limitation fixed by law," and where general appropriation act for 1913-1915 (Sess. Laws 1913, c. 239) appropriates to the board in one item for "salaries of officers and employees, $12,600" for the fiscal year 1914, and in another for "demonstration farming, $8,500," and where the auditor refused to draw his warrant to pay, out of the latter fund, a claim duly issued to relator by said board for "salary as bookkeeper and clerk in demonstration farming department Oklahoma State Board of Agriculture, month of August, 1913," held, that said claim is not payable out of the fund upon which it was drawn, and that mandamus will not lie to compel the auditor so to do, because prohibited by Constitution, art. 5, sec. 55.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

Mandamus by W. C. Lewis against James C. McClelland, Auditor of the State. Judgment for plaintiff, and defendant brings error. Writ quashed, and cause dismissed.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for plaintiff in error.

*John H. Wright* and *C. J. Blinn,* for defendant in error.

TURNER, J. From a judgment of the district court of Oklahoma county rendered and entered September 27, 1913, commanding J. C. McClelland, State Auditor, to allow the claim of,

"and to issue and deliver to said plaintiff, W. C. Lewis, a warrant for the sum of one hundred and twenty-five dollars ($125.-00) drawn on the Treasurer of the state of Oklahoma, payable out of the appropriation for demonstration farming for the State Board of Agriculture of the state of Oklahoma, as provided by general appropriation act of the state of Oklahoma, fiscal period 1913-1915 (chapter 239, Session Laws 1913 of the state of Oklahoma)," the State Auditor brings the case here. The claim referred to was one duly issued to defendant in error by the Board of Agriculture for "salary as bookkeeper and clerk in demonstration farming department, State Board of Agriculture, month of August, 1913." It was drawn upon the fund designated by the thirteenth item in said bill, appropriating to the State Board of Agriculture for "demonstration farming, $8,500."

It is contended by the State Auditor that the claim is not payable out of that fund, but is properly payable, if at all, out of the fund designated by the first item of said bill, appropriating to the State Board of Agriculture for "salaries of officers and employees, $12,600," for the fiscal year 1914. He further contends:

"That the only expense authorized by law to be paid from said item of 'demonstration farming, $8,500' are those arising under article 5, c. 2, of the Revised Laws of Oklahoma 1910 (Harris-Day Code), and are confined to three classes of expense, to wit: The seed furnished for planting crops, as provided by section 57; to the labor of men and teams as provided by section 58; and to the reimbursement for financial loss to the owners sustained by having faithfully complied with the provisions of said article, in no case to exceed $250 to one claimant in any year, as provided by section 59."

Assuming the relator was regularly employed by the board pursuant to Rev. Laws 1910, sec. 12, which gave the board "power to employ all clerical help necessary to conduct the business of the board and fix their compensation within the limitations fixed by law," the court erred in letting the writ go, for the reason that the contention of the auditor is correct. Whether the claim in controversy is properly payable out of one fund or the other is a question of legislative intent. It is clear that, if

the Legislature appropriated no part of the fund upon which it was drawn to the payment of this claim, it cannot be paid, for the reason that Constitution, art. 5, sec. 55, provides:

"No money shall ever be paid out of the treasury of this state, nor any of its funds  *  *  *  except in pursuance of an appropriation by law."

Speaking to a similar provision in the Constitution of the United States in *Humbert v. Dunn*, 84 Cal. 57, 24 Pac. 111, the court said:

"Its object is to secure to the legislative department of the government the exclusive power of deciding how, when, and for what purposes the public funds shall be applied in carrying on the government. 2 Opinions Attorney General, 670. It had its origin in Parliament in the seventeenth century, when the people of Great Britain, to provide against the abuse of the king and his officers of the discretionary money power with which they were vested, demanded that the public funds should not be drawn from the treasury except in accordance with express appropriations therefor made by Parliament (Hallam's Constitutional History, 555); and the system worked so well in correcting the abuses complained of, our forefathers adopted it, and the restraint imposed by it has become a part of the fundamental law of nearly every state in the Union. To the legislative department of the government is intrusted the power to say to what purpose the public funds shall be devoted in each fiscal year, and, as stated before, when the Legislature has clearly indicated its will as to the claim which is to be paid and the fund from which it is to be paid, the constitutional requirement is satisfied."

When the Legislature said, as it did, to this board that $12,-600 might be used to pay its officers and employees, it meant that amount, and no more, and out of that item or fund created by the bill, and no other. It certainly did not mean, as contended, that not only that amount might be expended, but also an indefinite amount out of the $8,500, by the same bill appropriated for "demonstration farming," might also be expended for the same purpose. Certainly not when the purposes for which the board is authorized to expend said $8,500 are expressly mentioned in Rev. Laws 1910, art. 5, secs. 58, 59, and which are set forth, *supra*, by the auditor. Of course, being limited to those

purposes thus expressed, no part of the $8,500 can be applied to other purposes not expressed, or, in other words, to the claim in controversy.

In *Burritt v. Com'rs of State Contracts*, 120 Ill. 322, 11 N. E. 180, the power invoked in mandamus provided that the books should be paid for out of "the appropriation for printing and binding, or any other appropriation made for that purpose." The court said:

"No further argument is required to reach the conclusion that an appropriation of $35,000 for printing is not an appropriation for purchasing books; nor is an appropriation of $10,-000 for binding an appropriation for purchasing books. Nor, again, is an appropriation of $35,000 for printing and an appropriation of $10,000 for binding, an appropriation for 'printing and binding.' It follows that, if the cost of these books was to be paid for out of the two appropriations referred to, as relator contends was the intention, it was an attempt to divert these specific appropriations, by joint resolution, from the purposes for which they were made, which is forbidden by the Constitution."

And so we say that, after the Legislature had thus, by the first item in the bill, appropriated for "salaries of officers and employees, $12,600" for the fiscal year 1914, and thereby clearly indicated that the board should have no greater amount to use for that purpose, for us to hold that the board might not only expend that amount, but also expend for the same purpose a part of the fund appropriated for "demonstration farming," would be, in effect, to permit the board to divert the last-named specific appropriation from the purposes for which it was made, which is expressly forbidden by the Constitution. In so holding we are not unmindful that the general appropriation act for the fiscal period July 1, 1911, to June 30, 1913 (Sess. Laws 1910-11, p. 366), contained, as its first item, for this board an appropriation for "salaries of officers and employees, $12,600," and another for "demonstration farming, $12,000," and that the same was construed by the board and the then auditor in the manner here contended by the board; that is, so as to permit a claim such as this to be paid out of the latter fund. Neither are

we unmindful that such was, in effect, the practical construction of the act by officers required to act under it. Nor are we unmindful of the rule that:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to a very great respect." (*Edwards v. Darby,* 12 Wheat. 210, 6 L. Ed. 603; *Hoffman v. County Com'rs,* 3 Okla. 325, 41 Pac. 566.)

But we will not follow that construction, for the reason that it is clearly wrong, and of such short duration that no harm will result, but good, in that to adopt a correct construction will prevent a deflection of the public money.

We are therefore of opinion that the court erred in letting the writ go, and for that reason the same is quashed and the cause dismissed.

All the Justices concur.