[No. 2450]

## C. A. NORCROSS, PETITIONER, *v.* GEORGE COLE, AS STATE CONTROLLER OF THE STATE OF NEVADA, RESPONDENT.

[189 Pac. 877]

1. STATES — HOME ECONOMICS ACT MAKES APPROPRIATION FOR INDEBTEDNESS INCURRED THEREUNDER.

Within Const. art. 4, sec. 19, inhibiting the drawing of money from the treasury except in consequence of an appropriation made by law, the home economics act, authorizing the incurring of certain indebtedness, makes an appropriation for payment thereof, even if to constitute an appropriation a specific amount must be set aside, a method being furnished by its provisions and those of Rev. Laws, 3618, whereby the amount can be determined, and that is certain which is capable of being made certain.

ORIGINAL PROCEEDING. Application for writ of mandamus by C. A. Norcross against George Cole, State Controller. **Peremptory writ ordered.**

*A. E. Cheney* and *F. H. Norcross,* for Petitioner:

The farm bureau act (Stats. 1919, p. 387) expressly provides that an appropriation is annually made which shall equal a certain ascertainable sum, and which shall not exceed a fixed minimum. Nothing further is necessary to constitute a valid appropriation. McCracken v. State, 41 Nev. 49; State v. Eggers, 23 Nev. 25, 29 Nev. 469; State v. LaGrave, 23 Nev. 25; State v. Searle, 112 N. W. 380; Town v. State, 7 Atl. 898; State v. Hipple, 64 N. W. 120. "The appropriation must be specific as to the amount, * * * it being sufficient, however, if the amount is capable of being determined." 36 Cyc. 892.

The purposes of the act in question make the matter one of "great public concern," and bring it under the recognized exception. State v. Cole, 38 Nev. 234.

*Leonard B. Fowler,* Attorney-General, and *Robert Richards,* Deputy Attorney-General, for Respondent:

The alleged appropriation calling upon the state controller to issue his warrants in the premises is invalid.

All disbursements of state money must be made not only by law, according to article 4, section 19, of the state constitution, but according to law as laid down in chapter 76, Statutes of 1915, which defines the duties of the state controller. His failure to observe the provisions of the organic and statute law concerning fiscal affairs, and even the method of accounting prescribed thereby, would make him guilty of malfeasance in office.

The chapter referred to is mandatory. It says: "He shall keep a record of all appropriations in a book provided for this purpose in which he shall  *  *  *  enter the amount *appropriated*  *  *  *  and the *balance* remaining, and the amount, if any, reverted." It is obvious that he cannot enter the balance remaining or the amount reverting if he cannot determine the amount appropriated.

"An appropriation  *  *  *  cannot be specific when it is to be ascertained only by the requisitions which may be made by the recipients." State v. Moore, 61 Am. St. 538. "By a specific appropriation we understand an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand." Stratton v. Green, 45 Cal. 149. "Specific appropriation means a particular, a definite, a limited, a precise appropriation." State v. Wallred, 12 Neb. 407; State v. LaGrave, 23 Nev. 25; State v. Eggers, 29 Nev. 469; State v. Ingram, 28 L. R. A. 187.

*Geo. B. Thatcher, Amicus Curiæ:*

The act of the legislature in question does not make an actual appropriation of state moneys such as would justify the state controller, under the constitution and statutes, in drawing any warrants for the purposes of the act. No appropriation is made within constitutional limitations, and there is no authority in law which would justify the state controller in drawing any warrant for any of the purposes of the act, for the reason that there

is no specific appropriation against which the same can be lawfully drawn. State v. LaGrave, 23 Nev. 24, 120, 125, 126; State v. Eggers, 33 Nev. 535, 539.

By the Court, COLEMAN, C. J.:

This is an original proceeding to obtain a writ of mandate, directing the state controller to issue his warrant in payment for certain services rendered in pursuance of an act of the legislature . (chapter 213, Stats. 1919, p. 387) to provide for cooperative agricultural and home economics extension work in accordance with the terms of the act of Congress known as the Smith-Lever act (Comp. St., secs. 8877a-8877h). Section 2 of our statute authorizes the organization of county farm bureaus as a preliminary step in the carrying on of the work contemplated, and section 3 thereof reads in part as follows:

"The board of directors of the county farm bureau and the director of agricultural extension shall prepare an annual financial budget covering the county's share of the cost of carrying on the cooperative extension work in agriculture and home economics provided for in this act, together with the share of each of all other cooperating agencies; *provided,* that the county's share shall not exceed a sum equal to the proceeds of one cent of the county tax rate, which, if adopted by a majority vote .of said bureau at a regularly called meeting, shall be filed with the board of county commissioners of such county, which said board shall include the county's share thereof in the budget of county expenditures for such year and shall annually, at the time of levying taxes for county purposes, levy a county tax, at a rate not exceeding one cent on each hundred dollars of taxable property, to provide such fund."

Section 4 provides:

" * * * There is hereby annually appropriated, out of any money in the state treasury not otherwise appropriated, a sum equal to the total appropriations of the

several counties for the support of county agricultural and home economics extension work as provided in section three of this act, but shall not be greater in any year than the proceeds of one cent of the state tax rate; * * * *provided,* that a certified copy of each such cooperative county budget shall be filed with the board of regents, the state board of examiners and the state controller within ten days after date of filing with the board of county commissioners."

It appears from the petition in this case that indebtedness has been incurred pursuant to the statute above mentioned, and that claims have been made and presented to and approved by the proper authorities. The only question which is raised upon this hearing is as to whether or not the statute in question makes an appropriation for the payment of said claims. No appropriation was made by the legislature in the general appropriation bill to meet the expenses incurred under the statute in question. It is conceded by the respondent that the purpose sought to be attained by the statute is a worthy one.

Section 19, article 4, of our constitution provides:

"No money shall be drawn from the treasury but in consequence of an appropriation made by law."

The rule requiring that no claim against the state can be paid until an appropriation has been made therefor by the legislature had its origin in England, and grew out of the abuse by the sovereign of the privilege of expending the public funds. Parliament, with a view of limiting the amount which the sovereign might pay out of the public funds, adopted a rule that no money should be paid out except in pursuance of an appropriation therefor. Hallam's Const. Hist. of England, Ed. 1862, c. 15, p. 555; Creasy on English Const. p. 293. The idea thus originating was carried into the constitution of the United States and of most of the states of the Union. Except as limited by the constitution, the legislature has plenary power in authorizing the expenditure

of public funds for public purposes, and, from a reading of the section of the constitution quoted, only one condition is imposed upon the legislature, viz, the making of an appropriation of money in the treasury to pay a claim. The act in question authorizes the incurring of the indebtedness; does it appropriate the money to pay it?

It is said in behalf of respondent that to constitute an appropriation a specific amount must be set aside for the purpose mentioned, so that the state controller can comply with section 6 of an amendatory act of the legislature of 1915 (chapter 76, p. 95), which provides:

"He shall draw all warrants upon the treasury for money, and each warrant shall express, in the body thereof, the particular fund out of which the same is to be paid, the appropriation under which the same is drawn, and the nature of the service to be paid, and no warrant shall be drawn on the treasury except there be an unexhausted specific appropriation, by law, to meet the same."

Where there are two acts upon a given subject, the rule is that in case they can be harmonized both will stand; but, if the statute last enacted does not violate a constitutional inhibition but is inconsistent with the prior act, the latter act will control. But we need not, in inquiring into the constitutionality of the act in question, determine whether the two acts are inconsistent. In fact, the argument is more likely to appeal to our sense of what should be the law, rather than to influence us in construing the law. But under the particular facts existing in this case, there is no force to the contention, even if the amendatory act of 1915 controls, for the reason that prior to the time of the filing of the petition in this matter the controller had the information which enabled him to tell to a penny the amount to be credited to the fund in question. Section 3618, Revised Laws, 1912, provides that the board of county commissioners of each county in the state shall, on the first Monday in March of each year, levy taxes

for county purposes; and, as shown, section 3 of the home economics act provides for the method. of raising each county's share, and requires the filing with the board of county commissioners of the several counties, before the first Monday in March of each year, of the necessary data as a basis for the county levy for that purpose; and section 4 of the same act provides that a certified copy of each such county budget shall be filed with the controller within ten days after such data shall have been filed with the board of county commissioners, which provision, it is admitted, has been complied with. It inevitably follows that not later than ten days after the first Monday in March, 1920, the respondent knew the exact amount which should be set aside to pay the indebtedness authorized by the home economics act.

It is true that the act in question does not name a given amount as a sum which was appropriated to pay the indebtedness, but the intention of the legislature to incur the indebtedness, and to have it paid out of the state treasury, is made clear, and a method is provided whereby the exact amount to be expended in pursuance of the act may be ascertained not later than ten days after the first Monday in March of each year. In our opinion, this is sufficient, for that is certain which is capable of being made certain. Mobile & Ohio R. Co. v. Tennessee, 153 U. S. 497, 14 Sup. Ct. 968, 38 L. Ed. 793.

That this is the general rule of law cannot be doubted, and in construing appropriation statutes the general rule has been adhered to. State ex rel. Ledwith v. Brian, 84 Neb. 30, 120 N. W. 916; Town of Highgate v. State, 59 Vt. 39, 7 Atl. 898; People ex rel. v. Miner, 46 Ill. 389; 36 Cyc. 892.

There is nothing in State v. LaGrave, 23 Nev. 25, 41 Pac. 1075, 62 Am. St. Rep. 764, in conflict with the views we have expressed. The statute in question in that case provided no method whereby it could be ascertained what amount should be set aside to meet the obligations which might be incurred under the act.

Conceding, as he does, the meritorious purpose of the act in question,.nevertheless respondent felt that fidelity to duty impelled his attitude in this matter.

For the reasons given we are of the opinion that a peremptory writ of mandamus should issue, commanding the respondent to draw his warrant as prayed.

It is so ordered.