## EDWARDS v. CHILDERS, State Auditor et al.

No. 15453—Opinion Filed July 1, 1924.

(Syllabus.)

**1. States — Statutes — "Appropriation" of Money.**

The appropriation of money is the setting it apart formally or officially for a special use or purpose, and where that is done by the Legislature in clear and unequivocal terms in a duly enacted law, it is an "appropriation." State ex rel. Bonsteel v. Allen (Fla.) 91 South. 104.

**2. Same.**

No arbitrary form of expression or particular words are required by the Constitution in making an appropriation, which may be made by implication, when the language employed reasonably leads to the belief that such was the intention of the Legislature. Menefee v. Askew, 25 Okla. 623, 107 Pac. 159.

**3. Same — Constitutional Requirements — Definiteness of Act—Creation of Special Fund.**

A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an express manner, amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of article 5, sec. 55 of the Constitution.

**4. Same—Special Fund Exclusive.**

Where a special fund is created from sources not coming from, or out of, the general revenue fund of the state, the authority to the official board or commission to spend said fund for a special purpose may be granted where the authority to disburse said fund or obligate the state is limited to the amount of money that may go into said fund, and such officer is not permitted to incur an indebtedness against the state which may be payable out of, or charged against, the general revenue funds of the state.

**5. Same — Lump Appropriation for State Highways—Validity.**

The construction, maintenance and repair of a system of state highways is incapable of being arbitrarily classified and itemized as to the amounts that may be expended for various purposes, in view of the fact that such amounts cannot be ascertained in advance of the work, and the further fact that such work is usually constructed through federal, county, city, and township aid, and for these reasons a lump sum or amount may be, by the Legislature, appropriated for such purpose.

**6. Same.**

Section 3 of ch. 101 and section 8 of ch. 48, of the Session Laws of 1923-24, are valid appropriation of public funds for purposes stated and do not contravene the provisions of article 5, sec. 55, of the Oklahoma State Constitution.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Injunction by A. J. Edwards against C. C. Childers, State Auditor, and others. From

the judgment, plaintiff brings error. Affirmed.

J. Berry King, for plaintiff in error.

George F. Short, Atty. Gen., John Barry, Asst. Atty. Gen., and McPherren & Wilson, for defendants in error.

LYDICK, J. This is a suit brought by A. J. Edwards, as plaintiff, in the district court of Muskogee county against the State Auditor, the State Treasurer, and the three members of the State Highway Commission, wherein the plaintiff seeks an injunction prohibiting the parties defendant from creating or paying any obligation out of the state highway construction and maintenance fund. The relief sought, if granted, would practically destroy the State Highway Commission and prevent the further construction and maintenance of state highways under the present law. The lower court denied the petition of the plaintiff in all respects except that it did enjoin the defendants from diverting and transferring to the state highway construction and maintenance fund the unexpended appropriated funds remaining to the credit of the state departments at the end of each fiscal year as provided in section 21 of ch. 48, being Senate Bill No. 434, of the Session Laws of Oklahoma of 1923-24. The case was determined in the lower court solely upon the law, and the plaintiff brings the case here on appeal by petition in error with transcript of the record attached. No cross-appeal is filed by the defendants. The right of the plaintiff to maintain this action has not been challenged, and we will, therefore, determine the issues presented upon the merits of the case.

In section 1, ch. 101, Sess. Laws of 1923-24, being House Bill No. 14, approved March 7, 1924, we have an act which levies a tax of two and one-half (2½) cents per gallon on gasoline consumed in this state. By section 3 of that act, 60 per cent. thereof, or one and one-half cent (1½c) per gallon, is placed in a special fund designated as "The State Highway Construction and Maintenance Fund." It is therein provided that all of this fund shall be expended without provision for residue to remain therein. It is therein provided that in so expending all of said fund, the department must use not less than 75 per cent. thereof for the construction of new highways, with the privilege of using a greater percentage, even to the inclusion of all the funds for this purpose. The portion not thus used must be used for the repair and maintenance of highways already constructed. Section 3, supra, reads as follows:

"One and one-half cents (1½c) on each gallon of gasoline produced by the said excise tax on gasoline shall be deposited in the state depository to the credit of the "State Highway Construction and Maintenance Fund," and which shall be expended as provided by law under rules and regulations not inconsistent therewith to be promulgated by the Highway Department. That the said fund so deposited shall be expended: First, in the repair and maintenance of state highways heretofore or hereafter constructed through the use of state funds with or without federal aid, or the proceeds of county aid or bond issue in connection with state or federal aid; second, in the construction of a primary system of state highways which shall fairly serve all parts of the state and to be designated by the Highway Department; provided, that not less than seventy-five per cent. (75%) of the funds going into the state highway construction and maintenance fund shall be used in the construction of new highways."

Chapter 48 of Session Laws of 1923-24, being Senate Bill No. 44, approved March 14, 1924, creates a State Highway Commission, consisting of three members, and makes extensive provision for the building and maintenance of state highways. In section 8, paragraph e, the state highway construction and maintenance fund is clearly defined as follows:

"All moneys raised by taxation or otherwise for use on the state highways of this state shall, unless otherwise provided by law, be placed in the state treasury in a fund to be known as the state highway construction and maintenance fund, and shall be expended on state or county highways as herein provided, upon warrants issued by the State Auditor after the filing of proper vouchers or claims, by the State Highway Commission."

It is here urged that the two sections of the statute above quoted, in so far as they purport to permit the use of funds for the purposes stated, are insufficient and contrary to the provisions of the Constitution of the state and that they are, therefore, void. Two reasons are assigned to support this theory, to wit: (1) That these sections of the statute do not attempt or purport to appropriate funds for uses of the department, and without such an appropriation these funds are unavailable; (2) that these sections of the statute do not "distinctly specify the sum appropriated and the object to which it is to be used" as required of appropriation bills by article 5, sec. 55, of the Oklahoma State Constitution.

It is admitted that the department cannot use the moneys in this fund unless the Legislature has appropriated the same for its

use. What is an appropriation? The Supreme Court of Florida, in the case of State ex rel. Bonsteel v. Allen, 91 South. 104, said:

"The appropriation of money is the setting it apart formally or officially for a special use or purpose, and where that is done by the Legislature in clear and unequivocal terms in a duly enacted law, it is an 'appropriation.'"

In Campbell v. State Soldiers' & Sailors Monument Commissioners, 115 Ind. 591, 18 N. E. 33, the Supreme Court of Indiana so clearly analyzed the term being considered that its conclusion is set out by the author of Words and Phrases (First Series) vol. 1, page 472, as follows:

"The use of technical words in a statute making an appropriation is not necessary. There may be an appropriation of public money without in any manner designating the act as an 'appropriation.' A direction to a proper officer or officers to pay money out of the treasury, or for a given object, may by implication be held to be an appropriation of a sufficient amount of money to make the required payments."

This rule was reaffirmed by that court in the case of Carr v. State, 127 Ind. 209, 11 L. R. A. 372, and the opinion of the court was quoted with approval by the Supreme Court of North Dakota in the case of State v. Jorgenson, 142 N. W. 450.

In the case of Menefee, State Treasurer, v. Askew, 25 Okla. 623, 107 Pac. 159, we said:

"No arbitrary form of expression or particular words are required by the Constitution in making an appropriation, which may be made by implication, when the language employed reasonably leads to the belief that such was the intention of the Legislature."

We know of no well-reasoned cases to the contrary. It clearly appears from the language of these statutes that the lawmakers intended to set apart the moneys coming into this special fund for the sole use of this department in the construction and maintenance of state highways. If we find the statutes to be otherwise sufficient, we shall hold them to be valid appropriations of public money for the purposes stated.

Do these acts specify the sum appropriated? It is helpful to review the reasons why such requirement of appropriation bills is found now in the organic law of all English-speaking nations. In earlier centuries in England the Crown wholly disregarded the people's Parliament and constantly plunged the kingdom into useless and extravagant

debt. In State v. Jorgenson (N. D.) 142 N. W. 450, the court said:

"The reason for requiring legislative appropriations is to be found in the extravagance and prodigality and favoritism of the English kings, who for purposes of their own, would squander the revenues, and in the desire of the Parliament to control these kings, not merely in their expenditures, but in their intrinsic powers, by themselves controlling the purse strings of the state."

In State v. Moore, 50 Neb. 88, 69 N. W 383, the court says that this organic law was wrested by the people from the English king in the Revolution of 1688, with the primary intention "to control the Crown in disbursement" of public moneys. This law was brought across the seas by our forefathers and has found its place in the Constitutions of the nation and the states of the Union in order that the legislative, and not. the executive, department of the state should say how much of the public funds should be expended for every purpose. In Menefee v. Askew, supra, we interpreted this constitutional limitation to require a specific appropriation in order that the power of the executive department and the discretion of its officers should be limited and controlled by the legislative arm of the government. We there approved the definition of a specific appropriation as set out in Stratton v. Green, 45 Cal. 149, where the court defined such an appropriation to be "the amount which is designated by law and, therefore, capable of exhaustion." If the appropriation bill sets aside an entire fund and no other money to be used for the purposes designated therein, then such fund is capable of exhaustion, and the power of the executive department is limited to moneys which the Legislature has ordered to be expended, and this harmonizes with the spirit of the organic law under consideration. This law was brought into being to curb the power of the monarch, to save the people from the prodigality of the king. This requirement was not intended, nor was it originally so worded as to protect the people from the ill-advised judgment and extravagance of Parliament itself. It merely made the will of the lawmakers paramount to that of the Crown in the expenditure of public funds. Neither the people nor their Parliament, by this law, sought to curb or regulate their own powers. It is well said in State v. Jorgenson, supra:

"We have yet to learn that either the English Parliament or the American Legislature has ever been jealous of itself."

So, it would seem that an act appropriat-

ing public funds to be used by a department of state conflicts in no wise with the letter or spirit of this law if it leaves no power in such department to use or expend any fund except those funds which the lawmakers viewed and considered, and, so beholding, clearly instructed such department to employ. In such case the department is restricted by legislative will to a definite limit for purposes stated.

In both sections of the statute under consideration, the Legislature has given the department an impressive command that all the moneys in this specific fund "shall be expended" for purposes and in the manner therein provided. The question before us is not new to the jurisprudence of our country. In Holmes v. Olcott, 189 Pac. 202, the Supreme Court of Oregon said:

"Vesting the Fish and Game Commission with authority to expend all moneys and license fees collected, as was done by Laws of 1915, c. 257, sec. 3, as amended by Laws of 1917, c 143, sec. 1, was a matter within the discretion of the Legislature upon which the court has no right to express its views. * * *"

"It must be conceded that such fees and fines, when collected, are to be paid to the State Treasurer, who shall place them in the general fund under the title of the 'Game Protective Fund Account,' and it is made his duty to pay all warrants drawn on such fund by the authority of the Fish and Game Commission, after the same shall have been duly audited by the Secretary of State, to the full amount of that fund. * * *

"Although, according to the weight of authority, the amount of an appropriation must be definite and certain, and the sum is not specified in the act in question, it becomes definite and certain when the moneys from such sources are collected and turned in to the State Treasurer. All of such revenues shall be appropriated under the terms of the statute. That is the effect of the decision in State v. Moore, 50 Neb. 98, 69 N. W. 377, 61 Am. St. Rep. 538, where it is said:

" 'An appropriation may be specific, according to any of the definitions heretofore given, when its amount is to be ascertained in the future from the collection of the revenue.'

"In People v. Miner, 46 Ill. 384, on the same question it was held:

" 'There is no force in the objection that the appropriation is for no certain amount. * * * It is not essential or vital * * * that it should be an amount certainly ascertained prior to the appropriation.'

"On the same point, in State v. Searle, 79 Neb. 111, 112 N. W. 380, the opinion says:

" 'No matter what the valuation of the grand assessment roll may be, the rate of taxation is fixed and it is merely a question of computation to determine what the tax will yield.'

"This doctrine is founded upon the maxim. 'Id certum est quod certum reddi potest.' So in the instant case, when collected and paid over to the State Treasurer, the amount of the license fee is annually made definite and certain."

In Norcross v. Cole, 189 Pac. 877, the Supreme Court of Nevada said:

"That this is the general rule of law can not be doubted, and in construing appropriation statutes the general rule has been adhered to. State ex rel. Ledwith v. Brian, 84 Neb. 30, 120 N. W. 916; Town of Highgate v. State, 59 Vt. 39, 7 Atl. 898; People ex rel. v. Miners, 46 Ill. 389; 36 Cyc. 892."

The Supreme Court of Nebraska followed the same line of reasoning in the case of State v. Babcock, 40 N. W. 316.

In the case of McClelland v. Lewis, 40 Okla. 551, 139 Pac. 990, we said concerning the organic law under discussion:

"Its object is to secure to the legislative department of the government the exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government. * * *.

"To the legislative department of the government is intrusted the power to say to what purpose the public funds shall be devoted in each fiscal year, and, as stated before when the Legislature has clearly indicated its will as to the claim which is to be paid and the fund from which it is to be paid. the constitutional requirement is satisfied."

In the case of Menefee v. Askew, supra, we have before us a case just sufficiently different from the case at bar as to well illustrate the reasons establishing the correctness of the rules we here announce. There a system of licenses, fines, and penalties was provided in a fish and game act. That measure was essentially a revenue producing measure, but its primary purpose was to protect the fish and game of the state and at the same time to produce a large amount of revenue for the ultimate benefit of the general funds of the state. The moneys to be produced thereunder were multiplied thousands of dollars a year, while the expense of operating the department was small. The act specifically provided for the

ultimate transfer of this money from the special fund into the general revenue fund of the state. The act contained also a provision for the payment out of these moneys of the cost of catching and shipping game which normally, under honest and efficient management, would be so small as to constitute a very meagre percentage of the vast amount of revenue to be raised by the bill. In the case at bar the special fund is directed to the sole use of the Highway Department in carrying into effect the provisions of the bill. This was not the intention of the Legislature. In the case at bar there is no provision permitting to accrue any unexpended residue in the fund created, while under the fish and game act the unexpended residue was intended to be the major portion of the fund and one of the two principal reasons why it was created. In the highway bill under consideration there is no provision by which any part of the moneys received can ever be transferred to the general revenue fund of the state, while in the fish and game act it is provided that all but the contemplated small expense of catching and shipping game should be transferred into the general revenue fund of the state and be ultimately used generally for the public welfare. In the case before us no department of state other than the Highway Department and no other public interests can ever hope to benefit from the funds received under the highway act, and therefore no other department or public interest can be made to suffer by the acts of the Highway Department in the extent of its use of this fund, that amount being fixed by the legislators as the total amount to be received into the fund. In the fish and game act, through the looseness and carelessness of the language used therein, it was left to the discretion of the Fish and Game Department, without limitation, to expend all the moneys the department might see fit to expend in catching and shipping game, and by the abuse of that privilege and power the vast funds created by the above measure could all be consumed and other departments of the state, and other general public interests be thereby made to suffer by the prodigality of the Fish and Game Department. In the case at bar the will of the lawmakers absolutely controls the amount of the fund to be expended by the Highway Department, while this is not true according to the provisions of the fish and game act. In the case before us the entire fund is set aside by the act to be used by the Highway Department, and the amount thereof will be certainly and definitely ascertained before the same

can be expended. In the fish and game act the contemplated advisable and necessary small expense of the department in catching and shipping game is not limited by the language of the act, and yet the act does not appropriate the entire fish and game fund for the stated uses of the department. In the case at bar the entire fund is clearly appropriated, while in the fish and game act neither all the fund nor any specific part thereof is dedicated to the use of that department. Accordingly we held that the fish and game act did not so specify and limit the expense of catching and shipping game by the department to a fund or an amount then certain or capable of being made certain as to satisfy the provisions of the organic law under consideration. That holding of the court we here affirm. The reasons supporting that holding do not appear in the case at bar, where the acts of the executive department are definitely controlled by the provisions of the bill.

The plaintiff in error quotes in his brief from the case of Fergus v. Russell (Ill.) 110 N. E. 130, Ann. Cas. 1916-B, page 1120, where the court said that an act which merely appropriated "such sums as may be necessary to refund taxes, etc." is void under the organic law now being considered, and we agree with that holding. The amount to be expended was not limited by legislative will. The rule is well expressed in the case of State v. Holmes, 123 N. W. 884, where the Supreme Court of North Dakota said:

"A statute, in order to constitute a legislative appropriation, must limit the amount of the state's funds which may be applied to the contemplated purpose."

This our lawmakers have well done in the statutes now under consideration.

A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an express manner, amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of article 5, sec. 55 of the Constitution. Where a special fund is created from sources not coming from, or out of, the general revenue fund of the state, the authority to the official board or commission to spend said fund for a special purpose may be granted where the authority to disburse said fund or obligate the state is limited to the amount of money that may

go into said fund, and such officer is not permitted to incur an indebtedness against the state which may be payable out of, or charged against, the general revenue funds of the state.

The plaintiff complains that these two statutes do not specify "the objects to which" the moneys appropriated should be applied as required by article 5, sec. 55, of the Constitution. The construction, maintenance, and repair of a system of state highways is incapable of being arbitrarily classified and itemized as to the amounts that may be expended for various purposes, in view of the fact that such amounts cannot be ascertained in advance of the work, and the further fact that such work is usually constructed through federal, county, city, and township aid, and for these reasons a lump sum or amount may be, by the Legislature, appropriated for such purpose.

We observe that the acts of the Legislature under discussion do not repeal the voluminous laws already on the books regulating the Highway Department except in so far as they are modified by these acts. Speaking generally and not definitely, these acts merely create a Highway Commission to be composed of three members in lieu of one Highway Commissioner, as provided under the old law, and graft onto the department a new system of field work for the construction and maintenance of highways. The existing laws provide, with much definiteness and certainty, for the employment and compensation of officers, deputies, assistants, clerks, stenographers, and other help and incidental expense of the department itself aside from the cost of the actual building and repairing of highways. A general appropriation bill passed by this Legislature specifically appropriates, with much definiteness, the moneys to be paid to officers and employes and for the payment of all incidental expenses above referred to aside from the cost of the actual construction of public highways. No set of lawmakers can sit in the Capitol of the state and intelligently specify for a year or two in advance the moneys to be expended in the different items of cost of the various projects of road business or just how that detailed work shall be done. The general object for which these moneys are to be expended is designated in the statutes under consideration as "the construction of a primary system of highways" and "the repairing and maintenance of state highways." No law could intelligently and successfully make detailed classifications and distinctions in a

very extensive further subdivision of these objects specified in the statute. The term "object" may be satisfied by a descriptive designation without a complete description of its various possible subdivisions. The constitutional rule requiring the specification of the object for which the moneys appropriated should be expended is a wholesome one, for reasons already discussed and easily apparent, but where the reason for the rule ceases, then an intelligent application of the rule must require that the rule be thereby satisfied. So it was held by the Supreme Court of the state of Illinois in the case of Martens v. Brady, 106 Ill. 266. In that opinion the court, among other things, said upon a similar point:

"Building roads and maintaining them when built are different undertakings, but both are necessary to carry out the general scheme or purpose of the act, which is to provide for better highways throughout the state. The purpose of the constitutional provision here invoked is to enable the Governor, when passing on appropriation bills, to consider and act on the items of the appropriations separately. In order to carry out the general scheme of the act, however, the building and maintenance of roads are so closely connected that it is difficult to say where one ends and the other begins. The act itself clearly contemplates but one fund to carry out its provisions, as is evidenced by section 1, which provides 'that the term "state road and bridge fund," when used herein, shall mean all moneys appropriated by the state of Illinois for road and bridge purposes.' We do not think the construction and maintenance of said aid roads constitute separate and distinct items, which, under the constitutional provision, it is required should be separately itemized in the bill making the appropriation."

Our attention is called to the provisions of article 5, sec. 55, of the Constitution, which provides that no money shall be paid out of the state treasury or any of its funds "unless such payments be made within two and one-half years after the passage of such appropriation act." It is urged that, under the provisions of the statutes under consideration, the appropriation of the fund so created continues as long as the act remains in force. The parties have referred us to no case squarely in point and we have found none applying this limitation to a case where the appropriation is that of a special fund created by a continuing special tax, the whole of which is dedicated to a single purpose.

A somewhat analogous question was before the Supreme Court of Pennsylvania

for consideration in the case of Commonwealth ex rel. Bell, Atty. Gen., v. Powell, Aud. Gen., et al., 94 Atl. 746. The act the validity of which was there attacked was one creating a special fund and dedicating it to a particular use for an indefinite length of time, as is here done with the state highway construction and maintenance fund. The Constitution of the state of Pennsylvania required that all appropriations other than those provided for in the general appropriation bill should be by a separate bill embracing but one subject. It was urged that the Pennsylvania act was not a general appropriation bill, but a distinct and separate appropriation by a bill embracing more than one subject. The court there said:

"It has no application to a fund created for a special purpose and dedicated by the act under which such fund is to be created to a particular use. The appropriation of the fund so created continues as long as the act which dedicates it to a particular use remains in force. * * *

"When a fund is thus created and dedicated to a particular use by an act of assembly, which provides for its safe-keeping and prescribes how it shall be made available, no further legislation is needed to make the act effective. Whether it be called an appropriation or a dedication of a particular fund makes no essential difference, because the fund, being set aside for the specified use, must be so held and paid out in the manner prescribed, as long as the act which provides for its creation remains in force. The requirement of section 16, art. 3, of the Constitution, that 'no money shall be paid out of the treasury except upon appropriation made by laws and on warrant drawn by the proper officer in pursuance thereof,' simply means that the public funds are not to be expended in any way except as directed by the law-making power. * * *"

It is sufficient to say that it is wholly unnecessary for a determination at this time as to whether or not the appropriation of the funds created by the acts under consideration lapse at the end of two and one-half years from the date of the passage of the act. The question is prematurely presented to the court.

Aside from the building of institutions for the education and religious training of our people, probably no civic improvement is of greater necessity to our people than the construction of an adequate system of public highways. The advent of the automobile has increased this necessity. Social intercourse, made easy by good highways, spreads learning, develops and elevates the ambition and moral standard of the individual citizen, creates pride and thereby patriotism for home and country; it tends to detect crime, destroy suspicion, create faith, and imparts to the whole people knowledge of the greatness of the nation and elevates civilization repidly to a higher and more efficient standard. The constitutionality of a legislative enactment must be presumed when attacked, and in its favor we will indulge every reasonable intendment in applying and interpreting the same in the light of the Constitution. And so, under the well-recognized rules of construction, we are of the opinion that the statutes under consideration do not deny the will but in fact keep the faith of those who wrote our constitutional law.

Judgment of the lower court is, therefore, affirmed.

JOHNSON, C. J., and McNEILL, NICHOLSON, BRANSON, HARRISON, WARREN, and GORDON. JJ., concur.