Dear Honorable Graves,
The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, whether House Bill 1027, Laws 1979, Chapter 180, Page 456 Thirty-Seventh Legislature, First Regular Session, 1979; cited as the "Oklahoma Campaign Finance Act", and to be codified as 26 O.S. 18-101 — 26 O.S. 18-113 (1979) is constitutionally valid. Your request recites the following constitutional considerations:
 "1. Citing the Oklahoma Constitution, Article V,Section 55 . . .
 "a. Since the bill House Bill 1027 provides for the payment of funds out of the public treasury and is not an appropriations bill, is it constitutional?
 "b. Is the bill constitutional since it contemplates payments being made two and one-half years after its passage?
 "c. Assuming that the bill is an appropriation made by law, is it constitutional since it does not specify a sum certain to be appropriated?
 "2. Is the bill constitutional in light of Article V, Section 56, which provides that a general appropriations bill shall embrace nothing but appropriations for the expenses of the executive, legislative and judicial department of the state and for interest on the public debt?
 "3. Is the formula for distribution of funds to political parties encompassed in Section 10(2) based on party registration constitutional in light of the equal protection clause of the 14th Amendment to the United States Constitution?"
Section 3 of House Bill 1027 creates the "Oklahoma Campaign Finance Fund", consisting of monies "received by the Oklahoma Tax Commission" and interest thereon derived in the following manner:
 ". . . Any person whose state income tax liability for any taxable year is One Dollar ($1.00) or more may designate One Dollar ($1.00) of such liability for the Oklahoma Campaign Finance Fund." Emphasis added
A husband and wife filing a joint return may each designate $1.00 "of such liability" for the Oklahoma Campaign Finance Fund.
Section 4 provides:
 ". . . All funds collected under this act shall be deposited in the Oklahoma Campaign Finance Fund in the State Treasury. The money in such fund shall be deposited by the State Treasurer in such a manner as is required for other state monies in the custody of the Treasurer, but monies in said fund shall be maintained separately from all other monies. All investment income of the fund shall be added to the fund, and all expenses incurred in the implementation of this act shall be paid from the fund. The State Budget Officer is authorized to draw his warrants on the State Treasurer and against the fund upon the filing in his office of proper vouchers executed by the designee of the Campaign Commission."
Section 5 directs the Campaign Commission to promulgate "all necessary rules" implementing the act, including provisions delineating authorized campaign expenses and determining whether or not such monies have been expended in the required manner, and continues:
 ". . . Once such rules have been adopted, monies from the fund cannot be expended by political parties or candidates for any other purposes."
Section 6 establishes disbursement procedures. The State Treasurer certifies to the Campaign Commission the amount of money in the fund on July 1 of each even-numbered year. The Campaign Commission reserves sufficient funds to meet necessary implementation expenses, and, then, determines the amount that will be made available to political parties and candidates. On the same date, the Campaign Commission receives the State Election Board's certification of the political parties recognized under the laws of this State. The Chairmen of all certified political parties file with the Commission written intent to receive monies from the fund on or before July 15, and disbursement is made to eligible parties by July 31. The Commission receives the State Election Board's certification of the names of all candidates eligible to receive disbursement on or before October 10. Candidates must apply for funds by October 15, and disbursement shall be made by October 20. Section 12 requires the chairman of each payee political party make written report on the expenditure of distributed funds to the Campaign Commission not later than November 30. The Commission provides copies of such reports to designated State officers by January 15 of the following year. Section 13 declares that any person expending funds contrary to law "or the rules of the Campaign Commission" shall be guilty of a felony, and, upon conviction, shall be ineligible to hold public office in this State for ten years. It also imposes a Five Thousand Dollar ($5,000.00) fine upon the chairman of a political party convicted of a felony for violation of the act, and renders the party of a convicted chairman ineligible to receive funds for a ten-year period. District Attorneys, who are made distributees of expenditure reports under 12, have prosecutorial responsibility.
Section 7 allocates fifty percent (50%) of the funds determined available for use to eligible political parties and fifty percent (50%) to eligible candidates. Funds allocated for candidates which are not distributed by October 20 are dispensed to the parties. Sections 8 and 9 contain substantive provisions governing distributions and expenditures. Political party chairmen are required to expend funds as directed by the executive committee of their party. Funds must be expended in compliance with rules promulgated by the Campaign Commission, and shall not be expended to meet primary election expenses. Other prohibited expenditures include selection of candidates at political conventions, and "direct support" of individual candidates in a general election. No candidate shall be eligible for receipt of funds who has not demonstrated that private contributions, other than his own investment in his campaign, are equal to the amount requested. Otherwise, the only limitation on the amount of funds available for disbursement is the amount requested. Section 11 allocates distribution to eligible candidates for specified state offices in accordance with selected percentages. Distributions shall be equal to the amounts for which the candidates "successfully applied", unless that sum exceeds the total amount available. Distribution shall, in the latter event, be based upon the ratio between the amounts "from which candidates have successfully applied."
Section 10 apportions the funds allocated under 7 for distribution to eligible parties. Those funds are supplemented by the funds designated for state offices which do not appear on the general election ballot 11c, and those for which eligible candidates have not successfully applied 11d. The monies constituting those funds become "designated for distribution" within 10. Each eligible political party receives ten percent of the funds so designated 10(1) . The balance of the funds designated for distribution are distributed according to 10(2), which provides:
 ". . . Funds designated for distribution to eligible political parties shall be distributed as follows:
"1 . . . .
 "2. All other funds shall be distributed to the political parties on a ratio basis, said ratio to be the same as that between registered voters in Oklahoma in each political party as shown in the most recent January 15 registration report to the State Election Board Secretary."
The Oklahoma Constitution, Article V, Section 55, provides:
 "No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or revising an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum." Emphasis added
Article V, Section 55 imposes three requirements, each of which must obtain before money can be expended: 1 Expenditures must be pursuant to an appropriation by law; 2 expenditure must be completed within two and one-half years after passage of the appropriating act; 3 the act making, continuing or revising the appropriation must be distinctly specific with respect to the sum appropriated and the object to which it is to be applied. Article V, Section 56 sets forth a fourth requirement. Article V, Section 56 provides:
 "The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative and judicial departments of the State, and for interest on the public debt . . . All other appropriations shall be made by separate bills, each embracing but one subject."
Your first question under Article V, Section 55, necessarily involves a determination of whether House Bill 1027 is an appropriation. Disbursements made pursuant to House Bill 1027 are from the Oklahoma Campaign Finance Fund consisting of monies received by the Oklahoma Tax Commission resulting from the designation by a taxpayer of $1.00 of the taxpayer's tax liability for the said fund. A special fund is created by the enactment. Accordingly, the following language from Edwards v. Childers, 102 Okla. 158, 228 P. 472 (1924), is applicable:
 "A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an expressed manner, amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of Article V, Section 55, of the Constitution. Where a special fund is created from sources not coming from, or out of, the general revenue fund of the State, the authority of the official board or commission to spend said funds for a special purpose may be granted where the authority to disburse said fund or obligate the State is limited to the amount of money that may go into said fund, and such officer is not permitted to incur an indebtedness against the State which may be payable out of, or charged against, the general revenue funds of the State."
All of the monies comprising the special fund created by House Bill 1027 are, by the terms of that act, appropriated and directed to be expended for the purpose specified and in the manner directed.
The entire fund is appropriated by that bill, and the amount accruing to and paid into the said fund is capable of being definitely ascertained.
Does the fact that payments beyond the two and one-half year limitation are contemplated violate Article V, Section 55? That question was also faced in Edwards v. Childers, supra. The Court observed that no authorities had been cited or discovered which applied the limitation to a special fund created by a continuing special tax, the whole of which is dedicated to a single purpose. The Court concluded that the question respecting the two and one-half year limitation was prematurely presented. The significance of the holding appears to be that the constitutional limitation is not applicable to special funds. State ex rel. Hawkins v. Oklahoma Tax Commission, 462 P.2d 536 (Okla. 1969), indicates that the intent underlying the two and one-half year limitation is to enable the legislature to ascertain at each biennial session the amount of surplus revenues that are available for appropriation during the next biennium. That intent is operative only with respect to general revenue funds. The Court cited with approval the following language from State ex rel State Aeronautics Commission v. Board of Examiners of State, 124 Mont. 402, 194 P.2d 633, 638, as follows:
 "`. . . This court has repeatedly held that these sections of the Constitution have no application to special or trust funds which have never been placed in the general funds of the state.'" 462 P.2d 539.
Inasmuch as House Bill 1027 does create a special fund which is not a part of the general funds of the state, that bill is not violative of the two and one-half year limitation imposed by Article V, Section 55. Edwards v. Childers, supra, also answers the question of whether House Bill 1027 sufficiently specifies the sum to be appropriated. If the amount accruing to and paid into the special fund created is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of Article V, Section 55. 228 P.2d 476.
Article V, Section 56, of the Oklahoma Constitution, by its express terms applies only to general appropriations bills. House Bill 1027 does not constitute such a bill but creates a special fund. The only question is whether it embraces but one subject. An appropriation of money is accomplished when it is set apart for a special purpose. Edwards v. Childers, supra, at page 473. Such setting apart arises from the legislative authorization itself and not a subsequent disbursement made pursuant to that authorization. Article V, Section 56 is not violated by the appropriation framed by House Bill 1027.
Your third question contemplates an equal protection analysis of Section 10(2) under the 14th Amendment to the United States Constitution. That subject is unrelated to your first two questions which address themselves to particular considerations relative to your essential question, namely: Is House Bill 1027 valid legislation under the provisions of the Oklahoma Constitution? That question goes beyond Article V to include, as well, the mandatory provisions of Article X of the Oklahoma Constitution impose limitations which merit particular consideration within the framework of House Bill 1027. Those limitations should be considered prior to an equal protection analysis under the Federal Constitution.
The Oklahoma Constitution, Article X, Section 14, provides:
 "Taxes shall be levied and collected by general laws, and for public purposes only, except that taxes may be levied when necessary to carry into effect Section Thirty-one of the Bill of Rights. Except as required by the enabling act, the State shall not assume the debt of any county, municipal corporation, or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion, or to suppress insurrection." Emphasis added
The language of Article X, Section 14, raises two questions: 1 Is a special fund, administered by the State Treasury, and consisting of monies received by the Oklahoma Tax Commission pursuant to legislation permitting taxpayers to designate One Dollar ($1.00) of their individual tax liability for such fund, subject to the limitation imposed by Section? 2 If so, where such fund is created by the State for the purpose of permitting it to make disbursements of monies to individuals qualifying as eligible candidates and to associations qualifying as eligible political parties, does the fund so created exist "for public purposes only"?
The answer to the first question is controlled by the authorities cited under Article V, Section 55. House Bill 1027 is an appropriations bill creating a special fund. The fund consists of monies which have been received by the Oklahoma Tax Commission and deposited into a separate account administered by the State Treasury. The monies comprising the fund derive from State revenue, and the only question is whether such revenue is generated by the taxation powers of the State. That question, in turn, is answered by Section 3 of House Bill 1027. The revenue of the state fund results from the designation of a specified amount of "state income tax liability" for the said fund. The Oklahoma Legislature has conferred upon individual taxpayers authorization to earmark a portion of their tax liability to a special state fund which is to be both administered and disbursed by the State. The individual taxpayer does not make a contribution for which a credit or deduction is allowable. Rather, taxpayers designate how a portion of State revenue resulting from their tax liability is to be spent by the State. The revenue from which monies in the fund accrue, results from taxes levied and collected by general laws.
The purpose for which the legislature has empowered individual taxpayers to earmark a portion of their tax liability for the Oklahoma Campaign Finance Fund can be no different than the purpose for which that fund exists. The purpose for which that fund exists, in turn, can be no different than the purpose for which state officials are directed to make disbursements from its monies. The purpose for which disbursements are made to "eligible candidates" and "eligible political parties" is to provide funds to them. The purpose for which the taxes so earmarked are levied and collected is ultimately identifiable with the purposes of the recipients. That purpose is to successfully compete against other candidates and parties. The funds are disbursed for the purpose of being spent. Whether or not Article X, Section 14, is violated turns upon whether the taxes from which those funds are derived were levied and collected for a public purpose, and House Bill 1027 authorizes the disbursement of state monies for the purpose of being spent by private individuals and associations in their quest of successful competition. Whatever arguable benefit may ultimately accrue to the general public from such a gratuitous transfer of state funds does not render aiding and abetting a private competitor a "public purpose". House Bill 1027 pledges the credit of the State to competing individuals and associations, and that pledge confronts clearly expressed constitutional prohibitions.
The Oklahoma Constitution, Article X, Section 15, provides:
 "The credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State; nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise to any company, association, or corporation."
The fund created by House Bill 1027 is a special state fund. House Bill 1027 authorizes and mandates the disbursements from the said state fund in the absence of any contractual obligation on the part of the state. Taxpayers merely earmark a portion of their individual tax liability. The disbursement is an inter vivos gift from an appropriated special state fund, which necessarily involves the State as donor. It is a gratuitous transfer of State property, voluntarily, and without consideration. Hawks v. Bland, 9 P.2d 720, 722 (Okla. 1932). Political parties are voluntary associations of electors. Cooper v. Cartwright, 200 Okla. 456,195 P.2d 290, 294; Ex parte Wilson, 7 Okla. Cr. 610, 125 P. 739, 744
(1912). A group of persons may form a recognized political party by complying with the statutory procedure mandated by 26 O.S. 1-108 (1974). The designated donees of the gratuitous disbursements directed under House Bill 1027 fall within the constitutional prohibition. They are composed of individual electors qualifying as "eligible candidates", and voluntary associations of electors qualifying as "eligible political parties". Such individuals and associations are wholly distinct from any agency, subdivision or other embodiment of the State.
Veterans of Foreign Wars v. Childers, 171 P.2d 618 (Okla. 1946), cited Vette v. Childers, 102 Okla. 140, 228 P.145, for the following proposition, which is controlling authority as to the question raised:
 "`Under Article X, Section 14 and Article X, Section 19, of the State Constitution, money in the State Treasury can only be appropriated and used for public purposes, and in order to constitute a public purpose, within the meaning of this constitutional provision, such purpose must not only be affected with a public interest, but must be performed by the state in the exercise of its governmental functions, and public funds cannot be used to assist individuals in a business which is affected with a public interest, as the Constitution neither authorizes nor contemplates the exercise of governmental functions by any person, association, or corporation, except the duly constituted officers of the state.'" Emphasis added 171 P.2d 621.
The Court was careful to point out that a wholesome purpose which benefits the public is not tantamount to a public purpose. The Court stated:
 "And it is the consensus of opinion in all other jurisdictions that public money may not be appropriated to a private corporation or organization, operating entirely without governmental supervision or control, no matter how wholesome may be the purpose or function of such organization nor how beneficial its activities may be to that portion of the public with which it comes in contact." 171 P.2d 623.
 It is, therefore, the opinion of the Attorney General that yourquestions be answered as follows:
 1. House Bill 1027, Thirty-Seventh Legislature, First Regular Session,Approved May 17, 1979, constitutes an appropriation of a special fundwhich does not violate Article V, Section 55 and Article V, Section 56,of the Oklahoma Constitution.
 2. House Bill 1027, Thirty-Seventh Legislature, First Regular Session,Approved May 17, 1979, constitutes a donation of the State by gift toprivate individuals and private associations of individuals which violatesthe mandatory provisions of Article X, Section 14 and Article X, Section15, of the Oklahoma Constitution.
 3. All of the provisions of Sections 3, 4, 6, 7, 10 and 11 of HouseBill 1027, Laws 1979, Chapter 180, Page 456, Thirty-Seventh Legislature,First Regular Session, Approved May 17, 1979 Title 26 O.S. 18-103, 26O.S. 18-104, 26 O.S. 18-106, 26 O.S. 18-107, 26 O.S. 18-110 and 26 O.S.18-111 (1979) relating to any authorization, procedure or actionassociated with the designation, certification, allocation,disbursement, distribution or expenditure of any monies for or in anyfund created by that Act are invalid and ineffective.
 On the basis of the answers comprising this opinion, it is unnecessaryto reach a determination of your third question which views the largerissue raised by you respecting the validity of House Bill 1027 from adifferent constitutional concern.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN PAUL JOHNSON, ASSISTANT ATTORNEY GENERAL