ROUNTREE et al. v. PHELPS, State Budget Director, et al.

No. 33264.   June 15, 1948.

Rehearing Denied Sept. 28, 1948.

*197 P. 2d 973.*

Cobb, Hill & Godfrey and Randell S. Cobb, all of Oklahoma City, for plaintiffs.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for defendants.

ARNOLD, J. Original proceeding in mandamus by the above-named plaintiffs to compel Roger Phelps, State Budget Director, to allow certain claims presented to him by plaintiffs and to compel A. S. J. Shaw, State Auditor, to issue his warrants upon such approved claims and to compel John Conner, State Treasurer, to pay said warrants when presented from the proper fund in the State Treasury.

It is alleged in plaintiffs' petition that they are the duly appointed, qualified, and acting members of the State Board of Health during the time covered by their claims here involved; that the defendant officers are the duly qualified and acting State Budget Director, State Auditor, and State Treasurer, respectively, and that their respective duties in the allowance of claims, the issuance of warrants and their payment are defined by law; that by virtue of their services as such members of the State Board of Health plaintiffs became entitled under the provisions of Title 63, chapter, I, Session Laws 1945, to be paid the per diem and expenses set forth in said Act; that the plaintiffs filed their claims duly approved by the State Board of Health for per diem and expenses earned and incurred by them during the biennium ending June 30, 1947, with the defendant, Roger Phelps, State Budget Director; that notwithstanding there are sufficient unencumbered monies in the appropriation made by House Bill No. 74 of the 21st Oklahoma Legislature to pay said claims, the defendant, Roger Phelps, State Budget Director, has failed and refused to allow for payment the aforesaid claims of these plaintiffs; that plaintiffs have no adequate remedy at law and that it is the clear, plain, and mandatory duty of the defendants to allow and pay said claims, but that the defendants and each of them will not, unless directed by order of this court, allow and pay said claims of plaintiffs as authorized and provided by the Constitution and statutes of this state.

To the application of plaintiffs to assume original jurisdiction, defendants made their response and to plaintiffs' petition defendants filed an answer in substance a demurrer alleging that plaintiffs' petition does not state facts sufficient to entitle them to the relief sought.

At the regular session of the Legislature in 1945 it enacted House Bill No. 77 (63 O.S. Supp. 1945, §§1.1 to 1.5, inc.). By section I of this Act a State Board of Health was created to consist of nine members, one from each of the congressional districts of the state and one member at large. The appointment was to be made by the Governor with the approval of the Senate on or after July 1, 1945, and their terms of office were fixed. The language of section I of the Act which is involved here reads:

"The members of such board shall receive as compensation for their services the sum of ten dollars ($10.00) per day and their actual and necessary expense while engaged in the performance of their official duties, provided, the total expenses for each member may not exceed one hundred dollars ($100.00) per year."

It appears that no appropriation was made at that session of the Legislature to pay the per diem and expenses of the members of the Board, but at the regular session of the Legislature in 1947, it enacted House Bill No. 74, section I of which reads:

"There is hereby appropriated from any monies in the emergency appropriation fund in the State Treasury, not otherwise appropriated, the sum of eighteen hundred dollars ($1800.00) for the biennium ending June 30, 1947 to be expended by the State Board of Health to pay members of said board compensation for their services and their actual and necessary expenses while engaged in the performance of their official duties as provided by House Bill No. 77, regular session of the 20th Legislature, same being Title 63, Chapter I, Oklahoma Session Laws 1945."

Section 2 of the Act carried the emergency clause.

Plaintiffs' contention as stated in their brief reads:

"Enrolled House Bill No. 74 was enacted by the 1945 Legislature to carry out the provisions of Section 17 of the Schedule to the Constitution. Section 17 of the Schedule is a mandate in the Constitution that the State officers involved here 'shall receive such compensation for their services as may be provided by law.' The three sections quoted above from the Schedule to the Constitution (Sections 15, 16, and 17) show that it is the intent of the Constitution that State officers shall receive for their services the compensation fixed by law for them to receive, and the failure of the Legislature to make an appropriation to pay them such compensation does not defeat their right to such compensation."

Sections 15, 16, and 17 of the Schedule to the Constitution have been considered and their language interpreted and applied by this court in numerous cases. Notable among these decisions are: Riley v. Carter, State Auditor, 165 Okla. 262, 25 P. 2d 666; Edwards v. Carter, State Auditor, 167 Okla. 287, 29 P. 2d 610; State ex rel. Telle v. Carter, State Auditor, 170 Okla. 50, 39 P. 2d 134; and Battles v. Childers, State Auditor, 177 Okla. 589, 61 P. 2d 253.

It has been the uniform holding of this court that where a state office has been created by constitutional provision or by legislative enactment and an annual salary therefor has been fixed, the salary so fixed is a constitutional appropriation from current revenues of the amount required to pay such salary. This is the gist of the decisions in the above-cited cases: We recall no decision by this court, and none is cited, which holds that the creation of an office by legislative enactment which provides no fixed annual salary, but authorizes a per diem compensation for days actually engaged in discharging the duties of the office together with actual and necessary traveling expenses, constitutes an appropriation by law for the payment of such compensation.

In the instant case the Board of Health was created and the compensation of its members was fixed at ten dollars ($10) per day while actually engaged in discharge of their duties and in addition they were to be reimbursed for their actual and necessary traveling expenses. This act was passed in 1945, but at that session of the Legislature it failed to make any appropriation to take care of the compensation of the members thus fixed. House Bill No. 74, passed in 1947, was evidently intended to rectify the oversight of the 1945 session in failing to make the necessary appropriation for the biennium beginning July 1, 1945, and ending June 30, 1947.

In 1941, Laws 1941, p. 547, the Legislature, by House Joint Resolution No. 10, drafted and caused to be submitted for adoption by the people an amendment to section 23, art. 10 of the Constitution, which was adopted March 11, 1941. Thereafter, and at the same session, the Legislature passed an act, being House Bill No. 461 to become effective July 1, 1941, vitalizing the constitutional amendment adopted March

11, 1941, which act was approved April 25, 1941, and carried the emergency. This constitutional amendment, and this vitalizing legislative act were intended to more definitely systematize the state's finances by establishing a budgetary system of accounting.

Throughout this amendment and the vitalizing act the predominant idea is to make the fiscal year, as defined in section 1 of article 10, Const., the basis for the encumbrance and expenditure of revenues appropriated. The estimates upon which appropriations are based are required to be on a fiscal year basis and the allocation of revenues covering appropriations is required by the State Auditor to be allocated upon a fiscal year basis. In the body of the amendment is this language:

"Revenues deposited in the State Treasury to the credit of the General Revenue Fund, or of any special fund, (which derives its revenue in whole or part from State taxes or fees) shall, except as to principal and interest on the public debt, be allocated monthly to each department, institution, board, commission or special appropriation on a percentage basis, in that ratio that the total appropriation for such department, institution, board, commission or special appropriation from each fund for that fiscal year bears to the total of all appropriations from each fund for that fiscal year, and no warrant shall be issued in excess of said allocation."

The last paragraph of the amendment reads:

"The State shall never create or authorize the creation of any debt or obligation, or fund to pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty four (24) and twenty five (25) of Article Ten (X) of the Constitution of the State of Oklahoma. Provided, that the Legislature may fund or refund the State debt arising prior to July 1, 1941."

In the Vitalizing Act the second paragraph of section 2 reads:

"The auditor shall not draw any warrant in payment of obligations arising from the appropriation items of any agency of the State unless there is sufficient balance in the cash account of such agency to pay the warrant at the time it is issued."

Section 5 of the Vitalizing Act reads:

"At the end of the sixth month following the close of any fiscal year, the State Auditor shall transfer the unencumbered cash balance of any agency for that fiscal year, to the credit of the General Revenue Fund for the subsequent fiscal year, which amount shall be allocated in the same ratio as current collections to that fiscal year's fund. The intention of this Section is to allow six (6) months after the close of the fiscal year for claims (such as salary claims, travel vouchers and miscellaneous charges which were incurred prior to the close of the fiscal year and which do not arise from contracts or purchase orders) to be presented to the State Auditor for payment. Any claim not presented within this six (6) months period after the close of each fiscal year shall be rejected by the State Auditor, except that he shall honor claims against nonfiscal-year appropriations until the end of the constitutional lapse period of two and one-half (2½) years. . . ."

This section, as applied to the situation here presented, is an express prohibition against the defendant officials approving the claims, issuing the warrants and paying the same for per diem and expenses of petitioners for the fiscal year ending June 30, 1946, because there was no appropriation for that fiscal year against which warrants could be drawn and no allocation of funds from which such warrants could be paid. The same is true as to the fiscal year beginning July 1, 1946, up to and including April 27, 1947, which was the day before House Bill No. 74 was approved. This is manifestly true by reason of the express prohibition contained in the first clause of section 55, art. 5, Const., which reads:

532

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law. . . . "

The appropriation here involved was made against the Emergency Appropriation Fund, which was not created until House Bill No. 30 was passed and approved February 10, 1947.

We are of the opinion that House Bill No. 74 of the 1947 legislative session, insofar as it purports to make an appropriation of public monies for the purpose of paying the per diem and expenses of plaintiffs as members of the Board of Health for the fiscal year beginning July 1, 1945, and ending June 30, 1946, is invalid and confers no lawful authority on the defendants to approve such claims and to issue warrants and to pay the same therefor.

It is alleged in plaintiffs' application and not denied by defendants that at the close of the fiscal year beginning July 1, 1946, and ending June 30, 1947, there was an unencumbered cash balance in the $1,800 appropriation out of the Emergency Appropriation Fund sufficient to pay plaintiffs' claims and we will assume this to be correct. Therefore, by reason of the six months' grace period contained in section 5 of House Bill No. 461 of the 1941 Legislative Session (62 O.S. 1941 §§8.1 to 8.18 inc.), which act continued in full force until July 1, 1947, we are of the opinion that as to those claims of plaintiffs for per diem and expenses for the fiscal year beginning July 1, 1946, and ending June 30, 1947, as members of such Board of Health, they are valid claims and within the appropriation made by House Bill No. 74, and defendants are directed to approve such claims and to issue and pay warrants therefor.

Being confident that defendants will obey the directions of this court as above set out, we will withhold the peremptory writ at this time.

HURST, C.J., and WELCH, CORN, GIBSON, and LUTTRELL, JJ., concur.

