OKLAHOMA MILITARY ACADEMY BOARD OF REGENTS — POWERS AND AUTHORITY Title 70 O.S. 3806 [70-3806] (1970) gives the Board of Regents power to enter into a contract for the presidency of Oklahoma Military Academy, now Claremore Junior College, and power to set the salary of the president of that institution. However, said Board of Regents cannot encumber revenues of future fiscal years. The Attorney General has considered your request for an opinion in your letter of May 4, 1971. The information that you provided is as follows: "The governing board of OMA, which in itself is a Board that works under the direction of the Board of Regents of Higher Education, has given the president a substantial raise and has given him a new contract for four years. Is this permissible under law?" To answer this question, we must determine what authority is granted the Board of Regents of Oklahoma Military Academy under the statutes. Title 70 O.S. 3806 [70-3806](b) (1965) provides: "The Board of Regents of the Oklahoma Military Academy shall have the supervision, management and control of the Oklahoma Military Academy; and it shall have the following additional powers and duties: (b) Employ and fix the compensation and duties of such personnel as it deems necessary, including architects, attorneys, engineers and other professional and technical persons for its operation and for the operation of the Oklahoma Military Academy. Subsection 70 O.S. 3806 [70-3806](g) provides: "Direct the disposition of all moneys appropriated by the Legislature or by the Congress or derived from the sale of bonds or received from any other source by the Oklahoma Military Academy." Subsection (o) provides: "Do all things necessary or convenient to carry out the powers expressly granted to it, or to make the Oklahoma Military Academy effective for the purposes for which it is maintained or operated." Two cases have been found dealing with the power and authority of the Board of Regents of a school or university. The case of Rheam v. Board of Regents, Okl.,18 P.2d 535 (1933), dealt with the Board of Regents of the University of Oklahoma rather than the Board of Regents of Oklahoma Military Academy. However, by analogy, the same rule of law would be applicable to the Board of Regents of Oklahoma Military Academy. The Oklahoma Court held in that case in Syllabus one: "The Board of Regents of the University of Oklahoma has the implied power to do everything necessary and convenient to accomplish the objects for which that school was founded and which is not prohibited, either expressly or impliedly, by law." In Baker v. Carter, Okl., 25 P.2d 747 (1933) the Court held in Syllabus two: "The Oklahoma Agricultural and Mechanical College is a public corporation, a separate legal entity, whose government and management is vested in a Board of Regents, and State Board of Agriculture. It has the power and authority to do everything necessary and convenient, where it is not prohibited, either expressly or impliedly by law, to accomplish the objects for which the institution is founded; and to do all things necessary to make the college effective as an educational institution." The two cases cited above state that the Board of Regents shall have the power to do everything necessary and convenient to accomplish the objects for which that school was founded and which is not prohibited, either expressly or impliedly, by law. Thus, we must determine what prohibitions there are, if any, on the Board of Regents to enter into contracts such as the one involved in your question. Article X, Section 23, Oklahoma Constitution, provides: ". . .the State Board of Equalization shall make an itemized estimate of the revenues to be received by the State under the laws in effect at the time such estimate is made for each year of the next biennium showing separately the revenues to accrue to the credit of the General Revenue Fund and each special fund of the State, . . . The Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such estimate is made and filed, unless the State Board of Equalization has failed to file said estimate at the time of convening of said Legislature, then, in that event, it shall be the duty of the Legislature to make such estimate pursuant to the provisions of this amendment, and all appropriations made in excess of such estimate shall be null and void;. . . The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty-four (24) and Twenty-five (25) of Article Ten (X) of the Constitution of the State of Oklahoma." The last two exceptions, Sections 24 and 25, relate to debts created by the affirmative vote of the people, and to debts necessary to repel invasion. Article X, Section 26, Oklahoma Constitution, provides: "Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose,. . ." Thus, these sections of the Oklahoma Constitution restrict the encumbrance of funds of any future fiscal year, unless approved by three-fifths of the voters. In the case of Rountree v. Phelps,200 Okl. 528, 197 P.2d 973 (1948), the plaintiff filed Mandamus action against the State Budget Director, State Auditor, and State Treasurer, to pay said warrants for claims filed by them. The Court held in its Syllabus No. 2: "Fiscal year as defined by Article X, Section 1 Oklahoma Constitution, is the accounting unit in state finances, and the monies subject to appropriation consist of current revenue and accumulated surpluses and no appropriation of monies of one fiscal year may be devoted to the payment of obligations of any other fiscal year except such as are designated 'non-fiscal year obligations.' " In the body of the opinion, on page 976, the Court stated: "This constitutional amendment and this vitalizing legislative act were intended to more definitely systemitize the state's finances by establishing a budgetary system of accounting. "Throughout this amendment and the vitalizing act the predominant idea is to make the fiscal year, as defined in Article X, Section 1 Oklahoma Constitution, the basis for the encumbrance and expenditure of revenues appropriated. The estimates upon which appropriations are based are required to be on a fiscal year basis and the allocation of revenues cover appropriations is required by the State Auditor to be allocated upon a fiscal year basis." In the case of Independent School District No. 1, McIntosh County, Oklahoma vs. P. A. Howard, Okl., 336 P.2d 1097
(1959), the Court held that: "Contracts executed or executory, entered into in one fiscal year and seeking to bind school district's revenues of a succeeding fiscal year, are void." Consolidated School District No. 6 v. Panther Oil Grease Mfg. Co., 197 Okl. 66, 168 P.2d 613
(1946), the Court held that: "The revenue of each year must take care of the expenditures of such year, and liability sought to be imposed by express or implied, executed or executory contracts in excess of current revenue in hand or legally levied is void unless authorized by vote of people within limitations provided by Constitution." In Attorney General Opinion No. 63-244, the State Board of Public Affairs asked for an opinion as to whether or not that Board was authorized by law to enter into a contract with a natural gas company to purchase natural gas for a period of more than four years. The Attorney general held that the State Board of Public Affairs was not authorized to enter into a contract for a period beyond the expiration of the fiscal year during which the contract was entered into. In Attorney General Opinion No. 63-263, the Adjutant General requested an opinion as to whether or not the Adjutant General of Oklahoma had the authority to enter into a contract with the Southwestern Bell Telephone Company providing for the installation of telephone equipment and use of the equipment over a five-year period. The opinion of the Attorney General held that this contract was void for the reason that it sought to encumber revenues of future fiscal years. As we can see from the above cited sections of the Oklahoma Constitution, the above cited cases, and the above cited Opinions of the Attorney General's Office, the Legislature or the governing board or body of any state institution, department, division, or any other State entity, is barred by law from encumbering the revenues of future fiscal years unless approval is given by three-fifths of the voters. In this case, the Board of Regents of Oklahoma Military Academy, now Claremore Junior College, entered into a contract with the president, giving him a substantial raise, and giving him a contract for four years. This contract is void, insofar as the contract attempts to bind or encumber revenues of a fiscal year other than the fiscal year in which the contract was entered, which is prohibited by the Constitution of the State of Oklahoma In summary, Title 70 O.S. 3806 [70-3806] (1970), gives the Board of Regents of Oklahoma Military Academy, now Claremore Junior College, authority to employ and fix compensation and duties of its personnel. In addition, there are cases in Oklahoma giving the Board of Regents the implied power to do everything necessary and convenient to accomplish the objects for which the school was founded, provided that power is not otherwise prohibited by law. However, the power granted the Board of Regents does not extend to the encumbering of revenues of future fiscal years. Therefore, it is the opinion of the Attorney General that the question raised in your letter of May 4, 1971, be answered in the negative. The contract is void insofar as it attempts to encumber revenues of a succeeding fiscal year, which is prohibited by the Constitution of the State of Oklahoma. (Todd Markum) ** SEE: OPINION NO. 79-099 (1979) **