CONTRACTS Clauses whereby the State agrees to pay taxes assessed against a private entity, or to reimburse that entity for taxes lawfully paid in connection with a contract between the State and that entity are inconsistent with the laws of the State of Oklahoma and thus void. Clauses whereby the State agrees to hold a private entity or individual harmless for his actions are inconsistent with the laws of the State of Oklahoma and thus void. Clauses whereby the State authorized a private entity to act as agent for the State are void unless specifically authorized by statute. Clauses whereby the State, acting through any agency other than the Attorney General, agrees to waive legal rights or defenses in advance are inconsistent with the laws of the State of Oklahoma and thus void. Clauses which provide that a contract is to exceed the then existing fiscal year, though subject to termination if the legislature fails to appropriate funds therefor, are inconsistent with the laws of the State of Oklahoma and thus void. Clauses whereby the State agrees to purchase liability insurance covering the subject matter of the contract is, absent specific legislative authorization, inconsistent with the laws of the State of Oklahoma and thus void. The Attorney General is in receipt of your letter in which you ask about the legality of the following clauses found in contracts drafted by private entities attempting to provide products and services to the State of Oklahoma: 1. Clauses whereby the state agrees to pay taxes assessed against a private entity or to reimburse that entity for taxes paid in connection with the contract. 2. Clauses whereby the state agrees to purchase liability insurance covering the equipment supplied. 3. Clauses whereby the state agrees to hold a private entity or individual harmless for his actions. 4. Clauses whereby the state authorized the private entity to act as agent for the state. 5. Clauses whereby the state agrees to waive the legal rights or defense in advance. 6. Fiscal year clauses which provide that the contract is to exceed the fiscal year, though in effect, subject to termination on nonappropriation of funds. 7. Clauses whereby state agrees to continue payment to assignees of the entity supplying the products or services, without regard to performance of services concerned. The first type of clause cited is, in effect, granting a tax exemption to the private entity with whom the State is contracting. It is also a relinquishing by the State of its taxing power over the property of the private entity involved in the contract. Sections 5 and 6 of Article 10 (Article X, Section 5, Article X, Section 6) of the Oklahoma Constitution cover these two situations. Okla. Const. Art.10, 5 states: "The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects." Article X, Section 6 of the Oklahoma Constitution sets out the property which is to be exempt from taxation. It states in pertinent part: "All property used for free public libraries, free museums, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States, and of this State, and of counties and of municipalities of this State, . . ., shall be exempt from taxation. . ." This provision of our Constitution was construed in the case of Board of Equalization of Tulsa County v. Tulsa Pythian Benevolent Association of Tulsa, 195 Okl. 458, 158 P.2d 904 (1945), which stated in pertinent part: "The Legislature is prohibitive by Constitution from extending tax exemption to property not otherwise exempt by the constitution." Certainly any constitutional limitation placed upon the Legislature of the State of Oklahoma would apply as well to a state agency. Therefore, it can be seen that under either Section 5 of Article 10 or Section 6 of Article 10, as construed in Board of Equalization, supra, clauses whereby the State agrees to pay taxes assessed against a Stanley J. Alexander, OBA #198private entity or to reimburse the entity for taxes paid on property concerned in a contract with the State are void as being contrary to the laws of this State. 15 O.S. 1971 211 [15-211]. Norris v. Van Handel, 196 Okl. 164, 163 P.2d 217 (1945). The second clause referred to in which the State agrees to purchase liability insurance covering the equipment supplied is not illegal, if the Legislature has given specific authorization for the state entity which is negotiating for the products contracted for, to purchase liability insurance for the contracted products. The Supreme Court of Oklahoma in Schrom v. Oklahoma Industrial Development,536 P.2d 904 (1975), stated that the purchase of liability insurance, pursuant to legislative authority, by a state agency, is a waiver of governmental immunity to the extent of the insurance coverage. Therefore, any clause in a contract which required the State to purchase liability insurance would, in fact, be requiring the State to waive its immunity. Volume 2, Okl. A.G. 179, at 180, states in part: ". . . the University of Oklahoma may not, in absence of express statutory authority, place the above-quoted provision This Paragraph 8.3 does not exclude the recovery of damages for delay by either party under other provisions of the contract documents., demanded by bidders, in its construction contracts which would purport to waive its immunity to civil suit for damages." Thus, lacking authority to purchase liability insurance, any attempt to require a state agency to do so and thereby waiving its sovereign immunity, is invalid and void. Therefore, the clause in question is valid and legal if the legislature has given specific authority to the agency which is seeking to purchase the goods or services, to acquire liability insurance. The third and fifth clauses listed will be dispatched together, in that they both refer to actions involved in litigation of a law suit. The third clause referred to attempts to immunize the private entity, contracting with the State, from suit based upon any act it may take in relation to the contract with the State. The decision to prosecute or bring suit against the private entity is one which should only be made after a cause of action has arisen and should be made by the individual who has authority to control and supervise the lawsuit for the State. This official is the Attorney General and not any member of the Board of Public Affairs. Title 74 O.S. 18 [74-18](b) (1976) states in part: "The duties of the Attorney General as the Chief Law Officer of the state shall be: * * * "(c) To appear at the request of the Governor, the Legislature, or either branch thereof, and prosecute and defend in any court or before any commission, board, or officers any cause or proceeding, civil or criminal, in which the state may be a party or interested; and when so appearing in any such cause or proceeding, he may, if he deems it advisable and to the best interest of the state, take and assume control of the prosecution or defense of the state's interest therein. * * * "(f) At the request of the Governor, State Auditor, State Treasurer, or either branch of the Legislature, to prosecute any official bond or any contract in which the state is interested, upon a breach thereof, . . ." Title 74 O.S. 63 [74-63] (1971), which sets out the powers and duties of the Board of Public Affairs, states: "Said board shall have charge of the construction, repair, maintenance, insurance and operation of all buildings owned, used or occupied by or on behalf of the State; it shall have authority to purchase all material and perform all other duties necessary in the construction, repair and maintenance of all such buildings; it shall make all necessary contracts by or on behalf of the State for any buildings or rooms rented for the use of the State or any of the officers thereof, and shall have charge of the arrangement and allotment of space in said buildings among the different state officers. It shall have the custody and control of all State property, and all other property managed or used by the State, except military stores and such as come under the control of the State Banking Department and the two Houses of the State Legislature; it shall procure all necessary insurance thereon against loss and shall allot the use of the same to the several offices of the State, and prescribe where the same shall be kept for public use. It shall keep an accurate account of all property purchased for the State or any of the departments or officers thereof, except that purchased for and by the two Houses of the State Legislature, which two Houses shall have the exclusive use, care and custody of their respective chambers, committee rooms, furniture and property, and shall keep their respective records of said furniture and property." As can be seen, no where in the statute is the State Board of Public Affairs given control over litigation. As was noted in State ex rel. Nesbitt v. Dist. Ct. of Mayes County, Okla., 440 P.2d 700 (Okl. 1967): "In absence of explicit legislative or constitutional expression to the contrary, the Attorney General possesses complete dominion over every litigation in which he properly appears in the interest of the State whether or not there is a realtor or some other nominal party." A state board or agency may not under the guise of its rule making, or in this case contract making, power extend the scope of its authority beyond those limits set by statute. Boydston v. State, 277 P.2d 138 (Okla. 1955); Adams v. Professional Practices Commission, 524 P.2d 932
(Okla. 1974). Title 15 O.S. 211 [15-211] (1971), states in part: "Those contracts are unlawful which are: * * * 2. Contrary to the policy of express law, though not ex pressly prohibited; . . ." Therefore, the third clause cited is void, in that it violates a policy of express law, that administrative agencies are not to exceed their statutorily granted powers. The fifth clause cited, which attempts to require the State to waive any legal rights and defenses, is likewise unenforceable as being illegal in that the State Board of Public Affairs is not the proper state agency to make such a decision and cannot do so under the guise of negotiating and performing a contract with a private entity. Clauses in which a private entity attempts to require the State to authorize the private entity to generally act as an agent for the State, are also illegal. The State Board of Public Affairs may only authorize a private entity to act as an agent of the State only to the extent that it is so authorized by the statutes. The Board may not attempt to extend its authority to obligate the state, via contract, to a greater limit than that which the legislature intended. Boydston v. State, supra. The sixth clause listed is one in which it is sought to extend the contract beyond the fiscal year of the State, subject to termination on nonappropriation of funds. Article X, Section 23 of the Oklahoma Constitution states in part: ". . . The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty-four (24) and Twenty-five (25) of Article Ten (10) of the Constitution of the State of Oklahoma . . . ". . . Any department, institution, or agency of the State operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency, shall not incur obligations in excess of the unencumbered balance of surplus cash on hand . . ." The two exceptions noted refer to debts created by a vote of three-fifths of the voters and debts necessary to repel invasion. This provision of the Constitution has been interpreted several times, most notably in Attorney General Opinion No. 63-244, where the State Board of Public Affairs sought an opinion as to whether it could bind the state to a four year contract, for the supply of natural gas, to the Western State Hospital, with a private natural gas company. In that opinion, the second paragraph of the syllabus of the case of Rountree v. Phelps, 200 Okl. 528, 197 P.2d 973 (1948), was quoted, wherein the Supreme Court of Oklahoma stated: "Fiscal year as defined by Section 1, Article 10, (Article X, Section 1) Const., is the accounting unit in state finances and the monies subject to appropriation consist of current revenue and accumulated surpluses and no appropriation of monies of one fiscal year may be devoted to the payment of obligations of any other fiscal year except such as are designated 'non-fiscal year obligations.'" Also noted in the opinion is a quote from Rountree v. Phelps, supra, at page 976: "Throughout this amendment and the vitalizing act the predominant idea is to make the fiscal year, as defined in Section 1 of Article 10, Const., the basis for the encumbrance and expenditure of revenues appropriated." The opinion noted other decisions of our Supreme Court which were in agreement with the Rountree v. Phelps, supra, decision, and concluded by stating that the Board could not "enter into a contract, . . ., for a period beyond the expiration of the fiscal year during which the contract is entered into . . ." A.G. Op. No. 63-244. A close look at the clause in question here will show that the intent of the clause is to bind the state to a contract which will continue into succeeding fiscal years, subject to appropriations being available in the succeeding fiscal years. This is precisely the evil sought to be prohibited by Section 1, Article 10, of the Oklahoma Constitution, and declared beyond the authority of the State Board of Public Affairs by A.G. Op. No. 63-244. The last clause cited, is one in which the State is to continue payment, under the contract, to the assignee of the entity supplying the products or services, without regard to whether the services are performed. This clause is presently the subject of litigation in the courts of Oklahoma and for the Attorney General to comment on it or issue an opinion on the legality of the clause at this time would be inappropriate. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Clauses whereby the State agrees to pay taxes assessed against a private entity, or to reimburse that entity for taxes lawfully paid in connection with a contract between the State and that entity, are inconsistent with the laws of the State of Oklahoma and thus void. Clauses whereby the State agrees to hold a private entity or individual harmless for his actions are inconsistent with the laws of the State of Oklahoma and thus void. Clauses whereby the State authorized a private entity to act as agent for the State are void unless specifically authorized by statute. Clauses whereby the State, acting through any agency other than the Attorney General, agrees to waive legal rights or defenses in advance are inconsistent with the laws of the State of Oklahoma and thus void. Clauses which provide that a contract is to exceed the then existing fiscal year, though subject to termination if the legislature fails to appropriate funds therefor, are inconsistent with the laws of the State of Oklahoma and thus void. Clauses whereby the State agrees to purchase liability insurance covering the subject matter of the contract is, absent specific legislative authorization, inconsistent with the laws of the State of Oklahoma and thus void. (Joseph J. Reinke) ** See: opinion no. 79-085 (1979) ** ** See: opinion no. 79-099 (1979) **