Dear Chairman McCall,
The Attorney General has considered your request for an opinion in yourmemorandum dated May 9, 1979, wherein you ask, in substance, whether atermination agreement form offered by Southwestern Bell Telephone Companyis a valid instrument where the following clause is included:
 This agreement shall be extended for an initial term beginning on thedate this Agreement is accepted by the Company (Southwestern Bell) andending at 12:00 midnight on June 30 of the then current fiscal year.Thereafter, this Agreement shall be an annual contract, on a fiscal yearbasis, until each of the respective minimum service periods for theequipment installed hereunder shall have expired, unless the Customer(State Agency) at least 60 days prior to the end of a fiscal year, shallgive notice in writing to Company of Customer's election to not renew andextend this Agreement in whole or part for the next succeeding fiscalyear, in which event the contingent charges, if any, applicable to theequipment not continued in service shall be paid by Customer to Companyat the expiration of the fiscal year during which such notice ofnon-renewal is given by Customer to Company.
The minimum term of this contract designated as the "minimum service period" is stated to be the" balance of current fiscal year from date of installation and each successive fiscal year until a period of 36 months from initial service date has elapsed." Rates are also fixed and made payable for a period of 36 months under the contract.
The Oklahoma Constitution, Article X, Section 23 and Article X, Section 26 and cases construing such provisions designate restrictions upon multiple year agreements by state agencies. Article X, Section 23, provides in part:
 The Legislature shall not pass or enact any bill, act, or measure making an appropriation of money for any purpose until such estimate is made and filed, unless the State Board of Equalization has failed to file said estimate at the time of convening of said Legislature, then, in that event, it shall be the duty of the Legislature to make such estimate pursuant to the provisions of this amendment, and all appropriations made in excess of such estimate shall be null and void; . . .
 The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Article X, Section 24 and Article X, Section 25
of the Constitution of the State of Oklahoma.
The two exceptions, Article X, Section 24 and Article X, Section 25, relate to debts created by the affirmative vote of the people, and to debts necessary to repel invasion.
Article X, Section 26, provides:
 Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, . . .
Thus, these sections of the Oklahoma Constitution restrict the encumbrance of funds of any future fiscal year.
In the case of Rountree v. Phelps, 200 Okla. 528, 197 P.2d 973 (1948), the plaintiff filed mandamus action against the State Budget Director, State Auditor, and State Treasurer, to compel the State Officers to approve payment of certain claims for funds in the state treasury. The Court held in its Syllabus No. 2;
 Fiscal year as defined by Article X, Section 1, Oklahoma Constitution, is the accounting unit in state finances, and the monies subject to appropriation consist of current revenue and accumulated surpluses and no appropriation of monies of one fiscal year may be devoted to the payment of obligations of any other fiscal year except such as are designated `non-fiscal year obligations.' (Emphasis added)
In the body of the opinion, on page 976, the Court in discussing Article X, Section 23, stated that:
 This constitutional amendment and this vitalizing legislative act were intended to more definitely systematize the state's finances by establishing a budgetary system of accounting. Throughout this amendment and the vitalizing act the predominant idea is to make the fiscal year, as defined in Article X, Section 1, Oklahoma Constitution, the basis for the encumbrance and expenditure of revenues appropriated. The estimates upon which appropriations are based are required to be on a fiscal year basis and the allocation of revenues cover (sic) appropriations is required by the State Auditor to be allocated upon a fiscal year basis. (Emphasis added)
In Phelps, the State agencies involved were restricted, under an interpretation the Court gave of Article X, Section 23 and Article X, Section 26 in the contractual expenditure of state funds beyond one fiscal year unless such expenditures are designated "non-fiscal year obligations" and therefore are not subject to appropriation by the legislature.
The decision in Phelps was followed by Attorney General Opinion No. 63-244 (May 8, 1963), involving the State Board of Affairs and its inability to offer a four (4) year natural gas contract. Subsequent opinions have followed the same reasoning: Atty. Gen. Op. No. 63-263 (May 24, 1963); Atty. Gen. Op. No. 71-255 (June 4, 1971); and Atty. Gen. Op. No. 78-256 (December 28, 1978).
Previous Attorney General Opinions have consistently applied the reasoning of Rountree v. Phelps to state agencies, the legislature, or a governing body or body of any state institution, department, division or any other state entity to restrict the encumbering of revenues of future fiscal years unless approval is given by three-fifths of the voters, under Article X, Section 26 of the Constitution. The position is further supported by case law in two related decisions. In the case of Independent School District No. 1, McIntosh County, Oklahoma v. P. A. Howard, Okla., 336 P.2d 1097 (1959), the Court held that:
 Contracts executed or executory, entered into in one fiscal year and seeking to bind school district's revenues of a succeeding fiscal year, are void.
See also Consolidated School District No. 6 v. Panther Oil Grease Mfg. Co., 197 Okla. 66, 168 P.2d 613 (1946), in which the court held that:
 The revenue of each year must take care of the expenditure of such year, and liability sought to be imposed by express or implied, executed or executory contracts in excess of current revenue in hand or legally levied is void unless authorized by vote of people within limitations provided by Constitution.
 Therefore, it is the opinion of the Attorney General that any clause ina contract entered into by the State or an agency thereof which purportsto bind the State to an agreement to expend fiscal funds beyond thefiscal year, regardless of conditions placed thereon which allow theState to cancel the contract upon failure to receive reappropriation forsuch expenditures, are violative of the Oklahoma Constitution and,further, any contractual provision which purports to assess a Stateagency with a penalty by reason of cancellation against by reason ofnonappropriation of funds is unenforceable.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
MANVILLE T. BUFORD, ASSISTANT ATTORNEY GENERAL