Dear Senator Riley,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following question:
 What is the State's liability when the Ad Valorem Reimbursement Fund is insufficient to reimburse counties affected by tax exemptions to manufacturing and utility companies, as well as other companies included in Section 2902 of Title 68 and other State statutes?
 Qualifying Manufacturing Concerns
¶ 1 On April 30, 1985, the people of Oklahoma adopted State Question No. 588, which amended the Oklahoma Constitution to establish an ad valorem tax exemption for qualifying manufacturing concerns. Today that section provides:
 Article X, § 6B. Qualifying manufacturing concern — Ad valorem tax exemption
 A. For the purpose of inducing any manufacturing concern to locate or expand manufacturing facilities within any county of this state, a qualifying manufacturing concern shall be exempt from the levy of any ad valorem taxes upon new, expanded or acquired manufacturing facilities for a period of five (5) years.
 B. For purposes of this section, a "qualifying manufacturing concern" means a concern that:
 1. Is not engaged in business in this state or does not have property subject to ad valorem tax in this state and constructs a manufacturing facility in this state or acquires an existing facility that has been unoccupied for a period of twelve (12) months prior to acquisition; or
 2. Is engaged in business in this state or has property subject to ad valorem tax in this state and constructs a manufacturing facility in this state at a different location from present facilities and continues to operate all of its facilities or acquires an existing facility that has been unoccupied for a period of twelve (12) months prior to acquisition and continues to operate all of its facilities.
 C. The exemption allowed by this section shall apply to expansions of existing facilities. Provided, however that any exemption shall be limited to the increase in ad valorem taxes directly attributable to the expansion.
 D. The Legislature shall define the term "manufacturing facility" for purposes of the ad valorem tax exemption provided by this section in order to promote full employment of labor resources within the state; provided, however, that a manufacturing facility that qualifies for the ad valorem tax exemption provided by this section, pursuant to the definition of "manufacturing facility" then applicable, shall be eligible for the exemption without regard to subsequent changes in the definition of the term" manufacturing facility".
 E. The Legislature shall enact laws to carry out the provisions of this section and to provide for the reimbursement to common schools, county governments, cities and towns, emergency medical services districts, vocational-technical schools, junior colleges, county health departments and libraries for revenues lost to such entities as a result of the exemption provided by this section.
Id. (emphasis added).
¶ 2 The requirements for a qualifying manufacturing concern are found at 68 O.S. Supp. 2002, § 2902[68-2902]. Originally passed as House Bill 1459 by the Legislature in 1985, (1985 Okla. Sess. Laws ch. 341, § 1 (codified at 68 O.S. Supp. 1985 § 2405.2[68-2405.2])), Section 2405.2 was repealed at 1988 Okla. Sess. Laws ch. 162, § 165, and a new law was enacted in 1988 with an effective date of January 1, 1992. 1988 Okla. Sess. Laws ch. 162, § 102 (codified at 68O.S. Supp. 1988, § 2902[68-2902]). Section 2902 provides the qualifications for the five-year ad valorem tax exemption. There have been 17 amendments to this statute since 1992,[1]
which largely expanded the obligations of the ad valorem reimbursement fund described below without expanding its resources.
¶ 3 On April 11, 1985, House Bill 1536 was enacted by the Oklahoma Legislature amending 68 O.S. Supp. 1984, § 2352[68-2352].
1985 Okla. Sess. Laws ch. 15, § 1. The first section of that bill provided the funding mechanism for the exemption. Id. One percent (1%) of the Oklahoma income taxes collected was placed in the Ad Valorem Reimbursement Fund. Id. § 1(2). Today that provision remains at one percent (1%):
 1. All revenue derived pursuant to the provisions of subsections A, B and E of Section 2355 [Oklahoma income tax] of this title shall be apportioned
monthly as follows:
. . . .
 d. for FY 2003 and each fiscal year thereafter, one percent (1%) shall be placed to the credit of the Ad Valorem Reimbursement Fund;
 2. All revenue derived pursuant to the provisions of subsections C and D of Section 2355 of this title shall be apportioned monthly as follows:
. . . .
 d. for FY 2003 and each fiscal year thereafter, one percent (1%) shall be placed to the credit of the Ad Valorem Reimbursement Fund.
¶ 4 68 O.S. Supp. 2002, § 2352[68-2352] (emphasis added). Section 4 of 1985 Okla. Sess. Laws ch. 15 (codified at 62 O.S. Supp. 1985, §193[62-193]), established the Ad Valorem Reimbursement Fund. Currently Section 193 provides:
 A. There is hereby created in the State Treasury a revolving fund for the Oklahoma Tax Commission to be designated the "Ad Valorem Reimbursement Fund". The fund shall be a continuing fund, not subject to fiscal year limitations. Monies apportioned to this fund shall be expended:
 1. To reimburse counties of this state for loss of revenue due to exemptions of ad valorem taxes for new or expanded manufacturing or research and development facilities;
 2. To reimburse counties of this state for loss of revenue for school district and county purposes due to exemptions granted pursuant to the provisions of Section 2890 of Title 68 of the Oklahoma Statutes [additional homestead exemptions];[2] and
 3. To reimburse counties of this state for loss of revenue due to decreased valuation and assessment for buffer strips pursuant to Section 2 of this act. [Title 68 O.S. 2001, § 2817.2[68-2817.2]][3]
¶ 5 Provided that it shall be the duty of the Tax Commission to assess the valuation of all property for new or expanded manufacturing or research and development facilities which are exempt from ad valorem taxes.
¶ 6 Monies apportioned to this fund also may be transferred to other state funds or otherwise expended as directed by the Legislature by law.
 B. The county commissioners of each county seeking reimbursement for lost revenue from the Ad Valorem Reimbursement Fund shall make claims for reimbursement on forms prescribed by the Tax Commission prior to April 30 of each year. Claims for reimbursement for loss of revenue due to exemptions of ad valorem taxes for new or expanded manufacturing or research and development facilities shall be made separately from claims for reimbursement for loss of revenue for school district and county purposes due to exemptions granted pursuant to the provisions of Section 2890 of Title 68 of the Oklahoma Statutes and separately from claims for reimbursement for loss of revenue for decreased valuation and assessment of buffer strips. Provided, the assessed valuation of a school district as stated in the claim for reimbursement shall be the same as reported to the State Department of Education on the Estimate of Need and shall include the total valuation of property exempt from taxation pursuant to Section 2902 of Title 68 of the Oklahoma Statutes. The claims shall be either approved or disapproved in whole or in part by the Tax Commission by June 15 of each year. A claim for reimbursement for loss of revenue due to an exemption of ad valorem taxes for a new or expanded manufacturing or research and development facility shall be disapproved if a county or school district has received any payment in lieu of ad valorem taxes from such facility, to the extent of the amount of such reimbursement. If the Tax Commission determines that an exemption has been erroneously or unlawfully granted, it shall notify the appropriate county assessor who shall immediately value and assess the property and place it on the rolls for ad valorem taxation. Disbursements from the fund shall be made on warrants issued by the State Treasurer against claims filed by the Tax Commission with the Office of State Finance for payment. Such disbursements shall be exempt from all agency expenditure ceilings. The county treasurer shall apportion or disburse such funds for expenditures in the same manner as other ad valorem tax collections.
 C. In the event monies apportioned to the Ad Valorem Reimbursement Fund are insufficient to pay all claims for reimbursement made pursuant to subsection B of this section, claims for reimbursement for loss of revenue due to exemptions of ad valorem taxes for new or expanded manufacturing or research and development facilities shall be paid first, and any remaining funds shall be distributed proportionally among the counties making claims for reimbursement for loss of revenue for school district and county purposes due to exemptions granted pursuant to the provisions of Section 2890 of Title 68 of the Oklahoma Statutes, according to the amount of the claim made by each county. If any funds remain after paying all claims for reimbursement for loss of revenue due to exemptions of ad valorem taxation for new or expanded manufacturing or research and development facilities and for reimbursement for loss of revenue for school district and county purposes due to exemptions granted pursuant to the provisions of Section 2890 of Title 68 of the Oklahoma Statutes, the remaining funds shall be distributed proportionally among the counties making claims for reimbursement for loss of revenue for decreased valuation and assessment for buffer strips pursuant to Section 2 of this act [Title 68 O.S. 2001, § 2817.2[68-2817.2]].
62 O.S. 2001, § 193[62-193] (emphasis added) (footnotes added).
 Discussion
¶ 7 The Oklahoma Constitution contains numerous provisions that impose a duty on the Legislature regarding fiscal matters.[4] In discussing the Oklahoma constitutional provision on municipal franchises, the Supreme Court opined, "[g]enerally, the term `shall' is mandatory and precludes alternative means of carrying out a mandate." Okla. Elec. Coop.,Inc. v. Okla. Gas Elec. Co., 982 P.2d 512, 514 (Okla. 1999). "Constitutional provisions are mandatory unless [it] appears from the express terms thereof or by necessary implication in the language used, that they are intended to be directory only."State v. Hunt, 286 P.2d 1088, 1091 (Okla. 1955) (quotingJones v. Freeman, 146 P.2d 564, 566 (Okla. 1943)). "Where the Constitution confers the power to do a particular act and prescribes the means and manner of doing such act, such means or manner is exclusive of all others." Zachary v. City of Wagoner,292 P. 345, 348 (Okla. 1930) (quoting City of Sapulpa v.Land, 223 P. 640 (syllabus) (Okla. 1924)).
¶ 8 The Oklahoma Legislature fulfilled its requirements under Article X, Section 6B. It enacted laws that defined "[m]anufacturing facilities" (68 O.S. Supp. 2002, § 2902[68-2902](B)(1)) and provided a funding mechanism to reimburse affected entities (id. § 2352; 62 O.S. 2001, § 193[62-193]). Under the constitutional provision, qualified manufacturing concerns are exempt from ad valorem taxes for up to five years, and the Legislature is responsible for reimbursing entities for lost ad valorem taxes due to those exemptions.
¶ 9 "Except where it encounters a specific constitutional prohibition, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma." Calvey v. Daxon,997 P.2d 164, 171 (Okla. 2000). "This Court, may not, based on its perception of how the State should conduct its business dealings, direct legislative decision making." Id. at 172. "The Legislature, being a co-ordinate branch of the government, may not be compelled by the courts to perform a legislative duty, even though the performance of that duty be required by the Constitution." Jones v. Freeman, 146 P.2d 564, 572 (Okla. 1943).[5]
¶ 10 The Ad Valorem Reimbursement Fund receives one percent (1%) of Oklahoma income taxes paid each year. 68 O.S. Supp.2002, § 2352[68-2352](1)(d), (2)(d). Article V, Section 55 of the Oklahoma Constitution provides:
 No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
Id. (emphasis added).
¶ 11 In Edwards v. Childers, 228 P. 472 (Okla. 1924), the Oklahoma Supreme Court discussed the requirements of Article V, Section 55:
 A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an express manner, amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of article 5, § 55, of the Constitution. Where a special fund is created from sources not coming from, or out of, the general revenue fund of the state, the authority to the official board or commission to spend said fund for a special purpose may be granted where the authority to disburse said fund or obligate the state is limited to the amount of money that may go into said fund, and such officer is not permitted to incur an indebtedness against the state which may be payable out of, or charged against, the general revenue funds of the state.
Id. at 476 (emphasis added). In Smith ex rel. State v. StateBoard of Equalization, 630 P.2d 1264, 1267 (Okla. 1981), a special fund was defined as "all funds which receive funds from taxes, charges, costs, grants, or other revenue." The Ad Valorem Reimbursement Fund is a special fund under Oklahoma law.
¶ 12 Allocation of one percent of Oklahoma income taxes paid each year makes the Ad Valorem Reimbursement Fund a "continuing appropriation." In Edwards, the court approved a continuing appropriation as to a special tax, comprising a special fund the whole of which was dedicated to "a single purpose." Edwards,228 P. at 477. The "special fund" exception to Article V, Section 55 was further recognized in State ex rel. Hawkins v.Oklahoma Tax Commission, 462 P.2d 536 (Okla. 1969), wherein the court stated:
 The 1941 Legislature's interpretation of Art. 10, Sec. 23, supra as reflected in H.B. 461, S.L. 1941, clearly approves a continuing appropriation or apportionment of a special fund arising from a special tax which is allocated or dedicated to a special purpose.
Id. at 542. Under Okla. Const. art. X, § 23(5), there are restrictions on payments for debts:
 Any department, institution or agency of the state operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency shall not incur obligations in excess of the unencumbered balance of cash on hand.
Id. (emphasis added).
¶ 13 If the claims approved by the Oklahoma Tax Commission exceed the unencumbered balance of cash on hand, warrants for the full amount of the claims cannot be issued under this Oklahoma constitutional provision.
¶ 14 Arguably, this result is unfair to those affected entities that are entitled under the Oklahoma Constitution to reimbursement for revenues lost as a result of this exemption. While a mandamus action to compel the Legislature to fully fund the Ad Valorem Reimbursement Fund is not permissible, mandamus actions have been allowed against State officers for constitutionally mandated appropriations. See Riley v. Carter,25 P.2d 666 (syllabus ¶ 2) (Okla. 1933). In construing the judicial salary of an Oklahoma Supreme Court Justice where the Legislature failed to provide sufficient appropriations, the court in Riley stated:
 [W]e hold that the language used in the Constitution as herein set forth constitutes an appropriation to pay the salary of the petitioner in such sums and in such manner as the Legislature has provided. It has all the elements requisite to an appropriation. It fixed a sum certain; the amount payable at the time of his election, because same could not be changed during his tenure of office; to whom payable; the time of payment, this being fixed by the Legislature in the exercise of a power granted, and in payment of a specific object. We further hold that, this being an appropriation made by the people in the Constitution, it constitutes a continuing appropriation, and that the limitation contained in section 55, art. 5, of our Constitution, is not applicable to appropriations made in the Constitution itself.
Id. at 679 (emphasis added). It should be noted Riley
occurred before the passage of the 1941 balanced budget amendment to Article X, Section 23.[6] The Oklahoma Constitution did not have the "unencumbered balance of cash on hand" limitation for payment of debts at the time of Riley.[7]
¶ 15 Oklahoma has a long line of cases directing county governments to pay constitutionally imposed obligations before voluntary debts. In Smartt v. Board of County Commissioners,169 P. 1101 (syllabus), (Okla. 1917), the court upheld the claims of the county sheriff who filed suit to recover the cost of feeding prisoners, where the fund allocated for these expenses had been exhausted. Board of Commissioners v. Lawrence,78 P.2d 669 (Okla. 1938) is like Riley, except the plaintiff was a county judge. The court held:
 The legal revenue of the county must be appropriated and used in defrayment of the cost of constitutional governmental functions insofar as may be necessary for that purpose. That is to say, compulsory indebtedness must first be met from the appropriations, then, within the limitation of said appropriations, as provided by section 26, article 10 of the Constitution, voluntary indebtedness must be taken care of. . . . And the following rule is announced in the case Protest of Kansas City S. Ry. Co., [11 P.2d 500 (syllabus ¶ 17) (Okla. 1932)]:" Until an appropriation has been made for the performance of constitutional governmental functions, no appropriation may be made for the performance of legislative governmental functions or for other expenditures of public funds."
Id. at 670 (emphasis added) (citations omitted). See alsoLeFlore County Excise Bd. v. St. Louis-San Francisco Ry. Co.,93 P.2d 1087, 1089 (Okla. 1939) (sheriff has a constitutional duty of transporting prisoners and serving process); HillcrestMed. Ctr. v. State ex rel. Dep't of Corr., 675 P.2d 432
(syllabus) (Okla. 1983) (hospital entitled to payment of bill for prisoner injured while being transported from a court hearing to prison).[8]
¶ 16 The Ad Valorem Reimbursement Fund statute provides that "claims for reimbursement for loss of revenue due to exemptions of ad valorem taxes for new or expanded manufacturing or research and development facilities shall be paid first." 62 O.S.2001, § 193(C) (emphasis added). This statute does not contemplate that this constitutionally imposed obligation will not be fully satisfied. Payment in full of all approved claims to affected entities for ad valorem tax exemptions on qualifying manufacturing concerns is required. History teaches that lasting harm will result from the failure to timely and fully fund our obligations.[9]
¶ 17 If monies remain after all approved claims for reimbursement to affected entities for qualifying manufacturing concerns are paid, the additional homestead exemptions are then considered. 62 O.S. 2001, § 193(C). If insufficient monies remain to pay all claims, the remaining funds will be distributed proportionally among the counties making claims for reimbursement. Id. If no funds exist to pay any claims for additional homestead exemptions, the claims are extinguished.Id.; Okla. Const. art. X, § 23(5).
¶ 18 If monies remain after all approved claims for reimbursement to affected entities for qualifying manufacturing concerns and additional homestead exemptions are paid, the buffer strip claims are considered. 62 O.S. 2001, § 193[62-193](C). If insufficient monies remain to pay all claims, the remaining funds will be distributed proportionally among the counties making claim for reimbursement. Id. If no funds exist to pay any claims for buffer strip claims, the claims are extinguished.Id.; Okla. Const. art. X, § 23(5).
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Constitution mandates reimbursement to affected entities for ad valorem taxes lost as a result of exemption to qualifying manufacturing concerns. Okla. Const. art. X, § 6B(E); 68 O.S. Supp. 2002, § 2352. This is an appropriation made by the people in the Constitution. Okla. Const. art. X, § 6B(E). Payment in full to common schools, county governments, cities and towns, emergency medical services districts, vocational-technical schools, junior colleges, county health departments and libraries is required by this constitutional obligation, even if the Ad Valorem Reimbursement Fund contains an insufficient balance of funds. 62 O.S. 2001, § 193(C); Okla. Const. art X, § 23(5); Riley v. Carter, 25 P.2d 666 (syllabus ¶ 2) (Okla. 1933).
 2. If the Ad Valorem Reimbursement Fund contains sufficient funds to pay all claims to affected entities for qualifying manufacturing concerns, claims for additional homestead exemptions will then be paid. 62 O.S. 2001, § 193[62-193] (C). If insufficient funds exist to pay all claims to affected entities for additional homestead exemptions, the claims will be paid proportionally from the remaining funds. Id. If no funds exist to pay any claims for additional homestead exemptions, the claims are extinguished. Id.; Okla. Const. art X, § 23(5).
 3. If the Ad Valorem Reimbursement Fund contains sufficient funds to pay all claims to affected entities for qualifying manufacturing concerns and all additional homestead exemptions, buffer strip claims will then be paid. 62 O.S. 2001, § 193[62-193] (C). If insufficient funds exist to pay all claims to affected entities for buffer strips, the claims will be paid proportionally from the remaining funds. Id. If no funds exist to pay any claims for buffer strip exemptions, the claims are extinguished. Id.; Okla. Const. art X, § 23(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma.
 DAVID L. KINNEY Assistant Attorney General
[1] 1992 Okla. Sess. Laws ch. 396, § 2; 1993 Okla. Sess. Laws ch. 68, § 1; 1993 Okla. Sess. Laws ch. 273, § 2; 1994 Okla. Sess. Laws ch. 278, § 32; 1995 Okla. Sess. Laws ch. 337, § 10; 1997 Okla. Sess. Laws ch. 190, § 5; 1998 Okla. Sess. Laws ch. 301, § 15; 1999 Okla. Sess. Laws ch. 134, § 1; 1999 Okla. Sess. Laws ch. 181, § 1; 1999 Okla. Sess. Laws ch. 363, § 1; 2000 Okla. Sess. Laws ch. 3, § 3; 2000 Okla. Sess. Laws ch. 339, § 20; 2001 Okla. Sess. Laws ch. 5, § 45; 2001 Okla. Sess. Laws ch. 118, § 1; 2001 Okla. Sess. Laws ch. 358, § 22; 2002 Okla. Sess. Laws ch. 232, § 1; 2002 Okla. Sess. Laws ch. 299, § 15.
[2] In Oklahoma, an additional deduction of one thousand dollars of the assessed valuation for real property with a homestead exemption is permitted when the gross household income of the head of household does not exceed twenty thousand dollars.68 O.S. 2001, § 2890(A).
[3] The buffer strip program deals with land conservation in conjunction with the Natural Resources Conservation Service (NRCS) and the Oklahoma Conservation Commission. 68 O.S. 2001, §2817.2[68-2817.2](B).
[4] I.e., "[t]he Legislature shall provide sufficient appropriations to pay the principal and interest of any general obligation bonds [Oklahoma Development Finance Authority] issued pursuant to this resolution." Okla. Const. art. X, § 42. "The Legislature shall provide for a system of textbooks for the common schools of the State, and the State through appropriate legislation shall furnish such textbooks free of cost for use by all pupils therein." Okla. Const. art. XIII, § 6. "The Legislature shall appropriate such sums as may be necessary to carry out the provisions of this Article [Court on the Judiciary]." Okla. Const. art. VIIA, § 6(d). "[B]ut the Legislature shall provide funds to reimburse them [Judicial Nominating Commission] for their necessary travel and lodging expenses while performing their duties as such Commissioners." Okla. Const. art. VIIB, § 3(g). "The Legislature shall, by appropriate legislation, raise and appropriate funds for the annual support of the common schools of the State to the extent of forty-two ($42.00) dollars per capita based on total state-wide enrollment for the preceding school year." Okla. Const. art. XIII, § 1a.
[5] The Supreme Court, in Alexander v. Taylor,51 P.3d 1204, 1209 (Okla. 2002), overruled the conclusion in Jones
that Oklahoma courts must decline to hear cases and grant remedies for violations of congressional redistricting disputes.
[6] Prior to 1941, Article X, Section 23 read:
The State may, to meet casual deficits or failure in revenues, or for expenses not provided for, contract debts; but such debts, direct and contingent, singly or in the aggregate, shall not, at any time, exceed four hundred thousand dollars, and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained or to repay the debts so contracted, and to no other purpose whatever.
[7] Rountree v. Phelps, 197 P.2d 973 (Okla. 1948) was decided after the 1941 balanced budget amendment was adopted.Rountree stated that the State Board of Health was created by the Legislature in 1945; its nine members were to be paid a sum of ten dollars per day and actual and necessary expenses, not to exceed one hundred dollars a year. Id. at 975. No appropriation for the per diem and expenses occurred during the 1945 session.Id. On April 28, 1947, the Legislature appropriated $1800 for the per diem and expenses from the Emergency Appropriation Fund for the biennium ending June 30, 1947. Id. The Board members filed claims for expenses incurred during the biennium ending June 30, 1947. Id. The Oklahoma Supreme Court denied the expenses for the fiscal year ending June 30, 1946, because there was no appropriation for that fiscal year pursuant to Article 10, Section 1 of the Oklahoma Constitution, and no allocation of funds was made from which such warrants could be paid. Id. at 977. The Supreme Court found this was not an "appropriation by law." Id. Rountree is different from the facts presented by this Opinion, because the Ad Valorem Reimbursement Account is acontinuing appropriation receiving 1 percent of the Oklahoma income tax each month. 68 O.S. Supp. 2002, § 2352[68-2352](1)(d), (2)(d). Additionally, in Rountree the Emergency Appropriation Fund from which per diem and expenses were to be paid was not established by the Legislature until February 10, 1947.Rountree, 197 P.2d at 977. Again, this is different from the facts present in Rountree as the Ad Valorem Reimbursement Fund was established in 1985. 68 O.S. Supp. 1985 § 2405.2[68-2405.2].
[8] See City of Del City v. Fraternal Order of Police LodgeNo. 114, 869 P.2d 309 (Okla. 1993) which provides a history of this line of cases.
[9] In his report Public Credit, delivered to Congress on January 14, 1790, Secretary of the Treasury Alexander Hamilton stated:
States, like individuals, who observe their engagements, are respected and trusted, while the reverse is the fate of those who pursue an opposite conduct.
Every breach of the public engagements, whether from choice or necessity, is, in different degrees, hurtful to public credit.
Report of Secretary of the Treasury Alexander Hamilton, 14 Jan. 1790, American State Papers: Public Credit: Finance III:15,available at
http://lcweb2.loc.gov/cgi-bin/ampage?collId=llspfileName=009/ llsp009.dbPage=15.